100 N.J. Super. 180 (1968)
241 A.2d 468
ATLANTIC MUTUAL INSURANCE COMPANY, A CORPORATION, AND SAPOLIN PAINTS INC., A CORPORATION, PLAINTIFFS,
v.
MARY A. RICHARDS, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF EDWARD RICHARDS, DECEASED, NATIONAL LEAD COMPANY, A CORPORATION AND THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 20, 1968.
*181 Mr. Richard J. Badolato for plaintiff Atlantic Mutual Insurance Company (Messrs. Schneider & Morgan, attorneys).
Mrs. Sonia Napolitano for defendant Employers' Liability Assurance Corporation, Ltd. (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
FURMAN, J.S.C.
This litigation is to determine whether there is insurance coverage under a loading and unloading clause in an automobile liability policy. The facts are undisputed on motion and cross-motion for summary judgment (R.R. 4:58).
Edward Richards was unloading a 50-pound bag of Bentone from the truck of his employer, National Lead Company, at the loading platform of Sapolin Paints, Inc. He fell into an open stairwell and sustained injuries which resulted in his death next day. No eye witness to his fall is known. A Sapolin employee had directed the National Lead truck driver, William Tappen, where to pull up at the loading platform. Tappen and the decedent were unloading the truck without the assistance or participation of any Sapolin employee. Tappen testified by deposition, which was stipulated, that he heard the decedent fall, turned about, saw a three-foot slat of wooden dunnage, which was not used in the unloading process, "rocking back and forth" next to the open stairwell and the decedent sprawled at the bottom. He testified that his truck had not carried dunnage that day. Inferentially, Richards tripped over the slat of dunnage and fell backwards into the open stairwell.
After recovery of workmen's compensation death benefits, Mary Richards, the widow, brought a tort action against Sapolin for wrongful death and survivor damages (N.J.S. 2A:31-1 et seq). The present plaintiff, Atlantic Mutual Insurance Company, filed an answer in that action as general *182 liability carrier for Sapolin. It requested by letter that the present defendant, Employers' Liability Assurance Corporation, Ltd., undertake the defense as automobile liability carrier for National Lead. Employers' Liability refused on the ground that the claim did not "fall within the coverage" of the automobile liability policy. Atlantic Mutual replied that it would hold Employers' Liability responsible for any judgment, costs and expenses. Atlantic Mutual negotiated the settlement of Richards versus Sapolin Paints, Inc. for $30,000.
Mary Richards' contentions in the death action are concisely stated in the pretrial order:
"The defendant was negligent, individually and by an [sic] through its servants and agents in that it failed to provide decedent with a safe place to work, negligently left pieces of wood on the loading platform causing a nuisance, dangerous and hazardous condition and maintained a stairwell without guard rails as a direct and proximate result of which the decedent sustained the injuries which resulted in his death."
The loading and unloading clause in the automobile liability policy issued by Employers' Liability is in standard form. The insurer undertakes to pay damages which the insured becomes legally obligated to pay because of bodily injury or death caused by accident and arising out of use of the automobile. The definition of "insured" extends to any person using the automobile with the permission of the named insured. Use of the automobile includes "the loading and unloading thereof."
Relying upon Maryland Casualty Co. v. N.J. Mfrs. Cas. Ins. Co., 48 N.J. Super. 314 (App. Div.), affirmed 28 N.J. 17 (1958) and Drew Chem. Corp. v. Amer. Fore Loyalty Group, etc., 90 N.J. Super. 582 (App. Div. 1966), Atlantic Mutual argues that because Edward Richards sustained the accident leading to his death while unloading the named insured's truck, ipso facto the burden of coverage must be borne by the automobile liability carrier.
*183 This argument brushes past distinguishable factual backgrounds in the Maryland Casualty and Drew Chemical cases. Both stemmed from litigation in which an employee of the general liability carrier's named insured was charged with negligence: in unloading in Maryland Casualty and in preparing to unload in Drew Chemical. Judge Goldmann in the latter case quotes favorably from Employers' Liability Assur. Corp. v. Indemnity Ins. Co., 228 F. Supp. 896, 900 (D. Md. 1964): "* * * all that is required to establish coverage is that the act or omission which resulted in the injury was necessary to carry out the loading or unloading."
In the tort case leading to the case sub judice the negligence alleged was breach of Sapolin's duty to its business invitee to maintain a reasonably safe place to work. The regular inspection of the loading platform, the remedying of a hazardous condition or the communication of an adequate warning may be viewed broadly as necessary for safe unloading. But the fulfillment of such duty was not a step in the specific operation of unloading the National Lead truck-load. To construe the maintenance of the loading platform as a "use of the automobile" in unloading would be to extend automobile liability coverage to negligence occurring prior to the arrival of the truck, that is, failing to remove dunnage from proximity to the open stairwell, and to a nuisance grounded in negligence, that is, the stairwell without guardrail. No New Jersey reported opinion has so held.
Out-of-state reported opinions tend to divide in their holdings according to whether the tort charged was an act or omission in the process of loading or unloading or in the maintenance of the loading or unloading premises.
Liability was imposed on the automobile liability carrier in McCloskey And Company v. Allstate Insurance Companies, 123 U.S. App. D.C. 177, 358 F.2d 544 (D.C. Cir. 1966) (negligent operation of a crane preliminary to unloading); Federal Insurance Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (3 Cir. 1960) (negligent operation of a crane in replacing rear wheels after unloading); Red Ball Motor *184 Freight v. Employers Mut. Liability I. Co., 189 F.2d 374 (5 Cir. 1951) (negligence in not closing valve safely after fueling truck on premises for loading); Maryland Casualty Co. v. Dalton Coal & Material Co., 184 F.2d 181 (8 Cir. 1950) (negligence in failing to replace manhole cover safely after delivering coal); Connecticut Indemnity Co. v. Lee, 168 F.2d 420 (1 Cir. 1948) (negligence in leaving open elevator in sidewalk preliminary to unloading); Maryland Casualty Co. v. Tighe, 115 F.2d 297 (9 Cir. 1940) (negligence in bumping into pedestrian while running back to truck during unloading); Travelers Insurance Co. v. Employers' Liability Assur. Corp., 242 F. Supp. 627 (D. Md. 1965) (negligence in maintainance of wire cord used in loading); Employers' Liability Assur. Corp. v. Indemnity Ins. Co., 228 F. Supp. 896 (D. Md. 1964) (negligence in raising overhead door, used in loading, above safety catch); Kings County Trust Co. v. Tudor Construction Corp., 28 App. Div.2d 853, 281 N.Y.S.2d 642 (App. Div. 1967) (negligence in construction or maintenance of a debris chute which collapsed during unloading); Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952) (negligence in bumping into pedestrian while walking back to truck during unloading).
Liability was imposed on the general liability carrier in Southern California Petro. Corp. v. Royal Indem. Co., 70 N.M. 24, 369 P.2d 407 (1962) (negligence in allowing gas to be trapped in oil well); Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. Co., 18 App. Div.2d 460, 240 N.Y.S.2d 88 (App. Div. 1963) (negligence in not remedying defective flooring on railroad pier); General Accident Fire And Life Assur. Corp. v. Brown, 35 Ill. App.2d 43, 181 N.E.2d 191 (Dist. Ct. App. 1962) (negligence in not remedying unsafe loading dock); see Bouleris v. Cherry-Burrell Corporation, 45 Misc.2d 318, 256 N.Y.S.2d 537 (Sup. Ct. 1964) (negligence in crating machinery, crate breaking during loading).
*185 Implicit in Atlantic Mutual's argument is that certainty in resolving insurance coverage disputes can be achieved by imposing liability on the automobile liability carrier whenever the accident occurred during loading or unloading. According to this argument, the particular tort charged may be contingent on the vagaries of pleading. For example, in Richards versus Sapolin Paints, Inc. an additional count might have been added for negligence in directing the delivery truck to an unsafe area of the loading platform. Whether recovery is on a count for negligence in maintenance or on a count for negligence in the process of loading or unloading may hinge on an election between inconsistent factual theories at the time of trial (see Ajamian v. Schlanger, 14 N.J. 483, 490 (1954); Shapiro v. Solomon, 42 N.J. Super. 377, 386 (App. Div. 1956)), or both counts may go forward to the jury as negligent acts or omissions which may have contributed independently to the proximate causing of the accident.
Although some trial problems are foreseeable because of initial uncertainty and the resolution of the insurance coverage dispute may require special interrogatories (R.R. 4:50-2), the sounder result favored by most courts is that automobile liability insurance under a loading and unloading clause should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading was carried out. The risk insured against should be limited to negligence in loading or unloading the automotive vehicle, including preliminary and subsequent measures proximate in time related to its loading or unloading.
Judgment is therefore granted in favor of the defendant The Employers' Liability Assurance Corporation, Ltd.