[Civ. No. 23646.   First Dist., Div. Four.   Nov. 7, 1968.]

P. E. O'HAIR & CO., Plaintiff and Respondent, v. ALL-STATE INSURANCE COMPANY, Defendant and Appellant.

Bronson, Bronson & McKinnon and Frederick S. Field for Defendant and Appellant.

John D. St. Clair, Edward J. McFetridge and Hauerken, St. Clair, Zappettini & Hines for Plaintiff and Respondent.

DEVINE, P. J.—The question in this case is whether an activity, described below, constitutes the loading of a truck. If it can be so held, an insurance policy issued by appellant Allstate Insurance Company subjects that company to liability resulting from a certain accident.

### Liability Under the Vehicle Policy

P. E. O'Hair & Co., a corporation, has brought this action for declaratory judgment at the behest of its insurer, American Insurance Company, which had issued a general liability policy to O'Hair. Allstate is the insurer of Richard Oppermann, a plumbing contractor, having issued a liability policy covering injuries resulting from the "use" of his vehicle. The policy further provides that "use" includes "loading and unloading" of the vehicle. It also provides that any person using the vehicle with the permission of the named insured is also insured. Thus, O'Hair is insured by the Allstate policy if the vehicle was being used, which means, in this case, if it was engaged in a loading operation when the accident occurred.

On October 14, 1963, Oppermann drove his truck to the premises of O'Hair, a seller of plumbing supplies, and parked at a loading dock at the rear of the building. He walked to the purchasing counter and ordered two or three lengths of four-inch diameter, double hub, soil pipe, five feet in length. Each length of pipe weighed about 45 to 50 pounds. James Keough, an employee of O'Hair, whose duties included the taking and filling of orders, waited on Oppermann as he had done a number of times in the past.

The supply of soil pipe was stacked, pyramid style, approximately 100 feet to the rear of the building. Soil pipe was always kept in the yard, never in the building. Oppermann

drove his truck from the loading dock to a point between 10 and 30 feet from this pile. Each individual section of pipe is bound together by two steel bands. Keough had attempted to take some pipes from the pile before he found that the band had to be cut. Oppermann stated that Keough broke the band on one end with the claw of a hammer. (Keough testified that it had already been cut.) Since the band on the other end of the pipe was still taut, it prevented Keough from removing any pipe. Keough asked Oppermann if he had any ''snips'' to cut the steel band; Oppermann replied that he did, got a pair from his truck, and, while standing in front of the pile, cut the band. The pipes were released and fell on Oppermann, causing the injuries for which he seeks recovery in a superior court action.

It was Keough's job to load the pipe onto customers' trucks; however, customers would often assist in this task. Oppermann had done so previously. It was the intention of both Keough and Oppermann that immediately after the band was cut, Keough would place the pipe on Oppermann's truck. Prior to the cutting of the band, nothing had been removed from the pile or had been placed on the truck.

The trial judge decided that under the facts recited above, which were contained in an agreed statement, the accident arose out of the loading of the truck within the meaning of the Allstate policy, and that Allstate was obliged to defend O'Hair as an additional insured and to indemnify O'Hair to the extent of $50,000, the amount of the policy, and to reimburse O'Hair for any costs, expenses and attorneys' fees theretofore incurred because of Allstate's rejection of a tender of defense.

Although the term ''unloading'' has been construed a number of times in relation to insurance policies, the word ''loading'' apparently has not yet been interpreted in this state. ▮ There is no doubt, however, that in California the ''complete operations'' doctrine has supplanted the more restrictive ''coming to rest'' rule. (*Entz* v. *Fidelity & Cas. Co.*, 64 Cal.2d 379, 383 [50 Cal.Rptr. 190, 412 P.2d 382]; *Truck Ins. Exchange* v. *Webb*, 256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791].) The acceptance of the more liberal doctrine in place of the ''coming to rest'' theory finds its application in the matter of the termination and not the beginning of a loading or unloading operation. The fact that the more liberal rule is adopted in California (as it has gained acceptance generally [see 95 A.L.R.2d 1129]) is an indication that a

liberal, although, of course, reasonable, interpretation ought to be made in favor of the insured as to what constitutes the commencement of a loading operation. This comports not only with the rule that uncertainties in insurance policies are to be resolved against the insurer (*Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455]), but also with the rule that the ''loading and unloading'' clause is one of ''extensions,'' that is, the insertion of such a clause in an insurance liability policy leads to the conclusion that it was inserted for the purpose of extending the coverage of the policy to accidents not covered by the other provisions of the standard motor vehicle liability policy. (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630 [235 P.2d 645].)

Before passing from the rules of interpretation set forth above to their application to the facts, we remark that although insurance is present in this case (Oppermann had automobile liability insurance, O'Hair had premises liability insurance), we must decide the single question whether O'Hair is an additional insured under the Allstate policy. The principle involved is the same as if a person who did not participate in the operation, a passerby, were injured by the falling pipe. (Such an unfortunate accident happened to a school girl in an unloading operation, as described in *American Auto. Ins. Co.* v. *Transport Indem. Co.*, 200 Cal.App.2d 543 [19 Cal.Rptr. 558].) Let us suppose that in such a case the only parties able to respond to a judgment were the owner of the vehicle and his insurer: would the operation constitute ''loading'' within the meaning of the vehicle owner's insurance policy?

We remark, too, that although the action of Oppermann, the named insured, in bringing the lawsuit against an unnamed party, O'Hair, as an additional insured, seems at first blush incongruous, such action is supported by authority. (*Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.*, 221 Cal. App.2d 150 [34 Cal.Rptr. 406].)

We support the trial court's conclusion that the accident arose out of loading of the truck within the meaning of the Allstate policy. Our reasons are:

1. It is said in the agreed statement that it was the job of Keough to load the trucks of customers. It is a fair, if not inescapable inference that when Keough went to the pile of pipes he was going about his job of loading them. Oppermann, in assisting Keough, was then engaged in the same operation.

2. Nothing remained in the performance of the transaction except the loading. The sale had been made. No preliminary steps, such as selection of merchandise, measuring, weighing, or the like were to be accomplished.

3. The fact that the soil pipe was always kept in the yard and never in the building tends to show no preparatory steps were to be performed at any distance. Indeed, there is nothing in the agreed statement to show that any preparatory steps, such as cutting the pipe to length, were ever performed in the yard.

4. While Keough proceeded to the place where the pipe was stacked, Oppermann drove his truck to a place close to the pile. Thus, both vehicle and the man (Keough) who was charged with the duty of loading proceeded toward the same place.

5. The snips with which the cut was made were carried in the vehicle.

6. Direct motions toward transportation of the pipe were made by both men. It is agreed that Keough attempted to move the pipe. If motion of the pipe itself be required, actual motion was caused by the severing of the band. Although the motion took a direction which was not intended, since the pipe fell on Oppermann, nevertheless the process of cutting the steel band was intended to, and did cause the pipes to be moved as part of the plan of both men to lift them into the truck.

The combination of all of these factors constitutes "loading."

The case of *Spurlock* v. *Boyce-Harvey Machinery* (La. App.) 90 So.2d 417, is one in which the accident occurred when wire bands binding bundles of grader blades were severed, and the operation was held to be "loading." It is true that one bundle had been loaded. We do not regard this distinction as significant. The intention of the parties to the case before us certainly was to load the vehicle. The fact that the pack was not a second bundle does not seem important. In fact, in the *Spurlock* case, there was a preparatory step still to be performed on the second bundle, that is, tagging the blades. In the case before us, no such preliminary step was contemplated. We do not regard the case of *General Acc. Fire & Life Assur. Corp.* v. *Jarmuth*, 32 Misc.2d 424 [150 N.Y.S.2d 836], to be persuasive. In that case, the driver of the insured automobile went to a public garage to pick up his car. While awaiting its arrival he set down two pieces of luggage he

intended to load into the car. An employee of the garage fell over the bags. The court held that the "complete operation" of loading the bags had not yet commenced. We have some doubt that the case would have been decided in the same way in this state. (See criticism of it as having minimized the causal factor in *American Auto. Ins. Co.* v. *Master Bldg. Supply & Lumber Co.*, 179 F.Supp. 699, 703.) But the case is distinguishable anyway. The bags over which the insured party fell were not being put in motion at all.

The automobile need not be, in the legal sense, the proximate cause of the claim; the events giving rise to the claim must, however, arise out of and be related to its use. (*Entz* v. *Fidelity & Cas. Co.*, 64 Cal.2d 379, 385-386 [50 Cal.Rptr. 190, 412 P.2d 382] ; *American Auto. Ins. Co.* v. *Transport Indem. Co.*, 200 Cal.App.2d 543, 550 [19 Cal.Rptr. 558] ; *Home Indem. Co.* v. *Transport Indem. Co.*, 263 Cal.App.2d 100 [69 Cal.Rptr. 504].) We are of the opinion that the event causing the accident arose out of and was related to the use of the vehicle.

It is argued by appellant that the buyers of vehicle insurance do not need "premises-operations" coverage, which is provided otherwise, and that it would be wrong to shift the burden of risks of this kind to the purchasers of automobile insurance. But many loading and unloading operations are performed where premises coverage would not apply. Besides, an operator of premises may have no insurance or inadequate insurance. The vehicle policy, in its reference to loading and unloading, does not exclude those operations when they are performed on premises which are or could be insured.

It is further argued that it is obvious that Oppermann never contemplated the possibility that his own company would be asked to cover O'Hair under the circumstances of this case. Of course, Oppermann did not contemplate that this particular accident would happen. He did have the right to benefit by the law, whether he was aware of it or not, that where there is some causal relationship between the accident and the use of the vehicle, the person conducting the unloading operations is covered by the policy, whether he is the driver of the vehicle, the consignor or consignee, or a third person. (See *Entz* v. *Fidelity & Cas. Co.*, *supra*, p. 383, and cases cited.)

For its part, Allstate must have contemplated that in view of the multitudinous lawsuits relating to what constitutes use of a vehicle, many kinds of accidents would be covered pro-

vided they occur in the course of operations which are an integral part of loading or unloading the vehicle. A line might be drawn by the courts, as a rule of convenience, so that cases falling on one side would be within the use of the vehicle, and the others would not, but the drawing of the line might well do injustice in particular cases. The very nature of loading and unloading operations is such as to preclude formulary disposition.

### Apportionment

Appellant says that if "the court should decide that the claim results from the use of the automobile, the question then arises as to how the insurers should apportion any loss." But apportionment was not an issue in the case. No judgment affecting the liability of American Insurance Company could be made because that company is not a party to the cause. In the complaint for declaratory relief, O'Hair asks that the Allstate policy be declared solely and primarily responsible for the matters alleged in the complaint. Allstate in its answer simply asks that plaintiff take nothing, although there is a prayer for general relief. The answer makes no reference whatever to American Insurance Company or to apportionment. It is true that in the agreed statement of facts it is said that one of the issues is "To determine the degree of coverage afforded by the ALLSTATE policy, should O'HAIR be found to be an additional assured thereunder." The court gave its response to this by declaring that plaintiff is insured under the Allstate policy to the extent of $50,000 (the full amount of the policy) for liability from this accident. Nothing is said in the findings of fact, conclusions of law, or judgment about apportionment, or about American Insurance Company. The policy of American Insurance Company is attached to the agreed statement, as is a policy of Continental Casualty Company covering the excess of American's policy. The existence of the policy covering the premises probably was made use of in the trial court, as it was here, in support of the argument, stated above, that vehicle policies should not be burdened with such coverage. But it seems that the issue of apportionment was not tried. Surely there is nothing in the judgment about it upon which we could act. The issue of apportionment, therefore, must await other proceedings.

The judgment is affirmed.

Rattigan, J., concurred.

CHRISTIAN, J.—I dissent.

Apparently no prior California decision has considered the circumstances in which loading should be held to have commenced. I would adopt the test propounded by a learned writer: "The 'complete operation' doctrine contemplates that the loading commences when the items of cargo *leave their original location on the way to the vehicle* . . . and that unloading does not cease until the items of cargo have reached the final point of delivery toward which the transportation of the cargo by automobile was a part." (Risjord, *Loading and Unloading,* 13 Vand. L. Rev., 903, 904; italics added.)

As the majority opinion points out, California is committed to the "complete operations" rule by several cases involving unloading. (*Entz* v. *Fidelity & Cas. Co.* (1966) 64 Cal.2d 379, 384 [50 Cal.Rptr. 190, 412 P.2d 382]; *Truck Ins. Exchange* v. *Webb* (1967) 256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791].) Useful analogies to our case may be drawn from cases dealing with the opposite end of the sequence: when unloading is to be held to have ended. No simple test can be found in these decisions, but the principle which seems to have guided them all is that when the term "loading and unloading" is used without elaboration or restriction in an insurance policy it is to be applied to each case in the manner most likely to conform with the reasonably implied intentions of the parties to the contract of insurance. Therefore, " 'the automobile need not be, in the legal sense, the proximate cause of the claim; the events giving rise to the claim must, however, arise out of and be related to its use.' " (*American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 550 [19 Cal.Rptr. 558]; *Home Indem. Co.* v. *Transport Indem. Co.* (1968) 263 Cal.App.2d 100 [69 Cal.Rptr. 504].) It seems to me that here the collapse of the pile of pipe did not "arise out of" the loading of the truck; the accident would as well have occurred if the retaining band had been cut preparatory to moving two or three lengths of pipe to some other place such as a stock bin inside the warehouse.

In *Entz* v. *Fidelity & Cas. Co., supra,* 64 Cal.2d 379, at p. 383, the Supreme Court held, in a case involving an injury which assertedly occurred in the course of unloading transit-mix cement, that unloading "has been completed when, following removal of the material from the vehicle, the deliveror has finished his handling of it, and it has been placed in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone on his

behalf, to transport it thereafter to another point." By analogy it seems to me reasonable to hold here that loading has not commenced when neither of the men had commenced moving the material from its "original location on the way to the vehicle." (Risjord, *op. cit., supra.*) The accident occurred as the result of a merely preparatory step taken by Oppermann. Compare *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165], another transit-mix cement case, in which unloading was held not to extend to the collapse of a bucket crane which was conveying cement from the insured vehicle to the spot on the construction site where the cement was to be used. This conclusion was held to be more likely to represent the intention of the parties in view of the fact that the cement could have been conveyed away from the truck by other means; it was considered "not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground." (229 Cal.App.2d at p. 236.) By analogy here, it is unlikely that Oppermann and Allstate intended an extension of coverage to an accident which occurred before the workmen commenced moving the load to the truck. Such an extension would include risks which Oppermann would hardly think of in connection with the use of his truck, and which his insurance carrier would have great difficulty in evaluating for purposes of fixing a premium. (See also *Truck Ins. Exchange* v. *Webb, supra,* 256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791].) Consistent with this view is *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.* (1951) 106 Cal.App.2d 630 [235 P.2d 645], where property damage resulting from negligent operation of facilities used in unloading the insured oil truck was held to be covered. In contrast to our facts, the negligent act there occurred during the actual course of unloading operations.

Finally, it seems to me that a test for the commencement of the loading process should be developed which can be applied with reasonable predictability. Otherwise parties are required to litigate, through the appellate stage, every case where an injury is in some manner related in time and place to the loading of an insured vehicle. For example, the present case, in the view of the majority, turns upon a set of unusual facts which do not seem to relate to any guiding principle. I think

the test suggested by Risjord, *op. cit., supra,* is preferable: it is predictable in its results, and it is likely to represent the unexpressed intentions of the parties.

I would reverse the judgment.

A petition for a rehearing was denied December 3, 1968. Christian, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 30, 1968.