[Civ. No. 25664. First Dist., Div. One. July 8, 1969.]

SHIPPERS DEVELOPMENT CO., Plaintiff and Appellant, v. GENERAL INSURANCE CO. OF AMERICA, Defendant and Respondent.

Hoge, Fenton, Jones & Appel and W. R. Rosecrans for Plaintiff and Appellant.

Richard E. Holbrook and Walter M. Sharman for Defendant and Respondent.

SIMS, J.—Plaintiff supplier appeals from a judgment in a declaratory relief action denying it protection and indemnity under a trucker's comprehensive liability policy for an injury incurred by one of the trucker's employees on the supplier's dock. The supplier contends that it must be indemnified as a permissive user since the injury was incurred during a "loading or unloading" operation, and that the employee exclusion in the policy does not apply to a claim of an employee of the named insured against a permissive user as an additional insured.

The trial court disposed of the case on the first issue and gave judgment for the defendant General Insurance Co. of America,[1] after finding that its named insured's employee had not yet begun any loading operations at the time he was injured. Examination of the stipulated facts in the light of applicable provisions of law leads to the conclusion that the

---

[1]Other named defendants were Safeco Insurance Co. of America, First National Insurance Co. of America, and Does One through Three. In defendant's amendment to answer, defendant alleged that defendants General Insurance Co. of America and First National Insurance Co. of America were part of a group of insurance companies known as the Safeco Insurance Group, and since Safeco and First National Insurance companies were not actually involved in issuing the policy in question, a motion to dismiss, as against them, would be made at the appropriate time. The clerk's transcript contains no record of such a motion. Nor is there any other indication that they were dismissed as defendants in the record before the court.

court erroneously resolved that issue, and that the second issue should be determined adversely to the insurer. The judgment must be reversed.

The parties stipulated to the facts, including excerpts from the deposition given by the claimant in his action for personal injuries, and a copy of the policy of insurance issued by the defendant to his employer, the trucker. They further agreed that if the plaintiff recovered it should recover $3,000. On appeal there is no dispute as to the facts, with the sole exception noted below.

### Loading and Unloading

Plaintiff supplier alleged that the named insured's employee's complaint for damages claimed ''damages for personal injuries allegedly sustained when unloading a truck owned by'' the named insured. This allegation was admitted by the insurer's failure to include any denial of that allegation in its answer. (Code Civ. Proc., § 462; *Guardianship of Guidry* (1961) 196 Cal.App.2d 426, 430 [16 Cal.Rptr. 579].) At the trial the insurer pointed out that the issue was not what the claimant alleged, but whether he was in fact engaged in loading or unloading. On appeal it asserts that the complaint did not so allege, and that it merely contains the allegations of an ordinary slip and fall case. ■ In any event, the allegations of the complaint made by a claimant are not conclusive in determining the obligation of an insurer to defend and indemnify anyone otherwise entitled to protection under the terms of the policy. (*Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange* (1961) 190 Cal.App.2d 194, 200-202 and 203-204 [11 Cal.Rptr. 762] [disapproved on issues unrelated to this case in *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 38 [17 Cal.Rptr. 12, 366 P.2d 455]].)

The policy provides in part, as follows: ''I. BODILY INJURY AND PROPERTY DAMAGE LIABILITY: To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed by law (1) upon him or (2) upon another but assumed by the insured under a contract; (a) for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained or alleged to have been sustained by any person or persons caused by an occurrence; (b) for damages because of injury to or destruction of property, including the loss of use

thereof, arising out of the ownership, maintenance or use of automobiles, including the loading and unloading thereof; . . .

"III. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS: As respects the insurance afforded by the other terms of this policy under Insuring Agreement 1. (a) to defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; (b) to pay all . . . expenses incurred by the company, all interest on the entire judgment which accrues after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon, and any expense incurred by the insured, in the event of bodily injury, or sickness, for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence of the injury except medical and surgical relief made necessary by war; . . .

"IV. DEFINITION OF 'INSURED': The unqualified word 'insured' wherever used includes not only the named insured but also . . . (3) any person while using an automobile owned or hired by the named insured or spouse and any person or organization legally responsible for the use thereof provided the actual use is with the permission of the named insured or spouse. [There follow exceptions not relevant to this case]."

"CONDITIONS . . . 3. *Definitions* . . . (4) *Occurrence.* The word 'occurrence' wherever used in the policy shall mean a happening or a continuous or repeated exposure to the same general conditions, which, unexpected by the insured, causes injury during the policy period."

At the time of his injury the claimant, Ireland, was an employee of the named insured, a produce dealer. He came to the premises of the plaintiff supplier for the purpose of icing the produce in his employer's truck and trailer. The ice was to be sprayed on the produce from a hose with the help of the supplier's employees, but the accident occurred before the claimant had notified the supplier's employees of his needs, and before any ice was squirted in either the truck or trailer. On arrival at the supplier's dock the claimant got out of the

truck, and, as was his practice opened the door of the truck. He then went along the dock toward the back end of the truck so he could go over and open the trailer door. This door had to be opened before the trailer was pulled up after icing the truck, and it was the practice to open both doors before putting ice in either one. The claimant fell off the north end of the dock before he could descend to the ground and open the trailer door.

The insurer does not contend that the policy does not cover a party using the insured vehicle in the course of loading or unloading in a proper case. The policy only refers to ''loading and unloading'' with respect to insurance for damages because of injury to or destruction of property. It does, however, generally refer to ''any person while using an automobile . . . with the permission of the named insured.'' ''In other jurisdictions there is a split of authority upon the question of whether an insurance policy which provides coverage to persons 'using' an automobile but does not expressly include 'loading and unloading' includes liability for injuries caused in the loading and unloading process. (See 12 Couch on Insurance 2d, § 45 :64, p. 153, et seq.) ■ However, in California it has been uniformly held that in the loading *or unloading* of a truck the negligent party is 'using' the truck even though the policy does not expressly include 'loading or unloading' and is an additional insured under the policy. (*General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 87 . . .; *Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352, 357 . . .; *Campidonica* v. *Transport Indem. Co., supra,* 217 Cal.App.2d 403; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 33 . . .)'' (*United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 465 [50 Cal.Rptr. 576]. See also, *Home Indem. Co.* v. *Transport Indem. Co.* (1968) 263 Cal.App.2d 100, 103, fn. 2 [69 Cal.Rptr. 504]; *Truck Ins. Exchange* v. *Webb* (1967) 256 Cal.App.2d 140, 144 [63 Cal.Rptr. 791]; and Annot. (1963) 89 A.L.R.2d 150, 171-172.)

The insurer asserts, as found by the lower court, ''The Workman had not yet begun any loading operations at the time he was injured. . . .'' At the time judgment was entered in this case (March 5, 1968), there were no precedents in this state relating to the question of when the process of loading or unloading commenced. The existing decisions involved the issue of whether or not the unloading had been

accomplished at the time of the accident. (See for example, *Entz* v. *Fidelity & Cas. Co.* (1966) 64 Cal.2d 379, 383 [50 Cal.Rptr. 190, 412 P.2d 382]; *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229, 236 [40 Cal.Rptr. 165]; and cf. *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194, 204.)

Thereafter, it was determined in *Home Indem. Co.* v. *Transport Indem. Co., supra,* that where one act of unloading a mixer truck had occurred and a new one had not commenced, the insurance afforded a permissive user, a crane operator, during the loading and unloading of the truck would not cover the crane operator for injuries suffered by an employee of the general contractor while the crane was being moved from one station to another in order to complete the unloading. (263 Cal.App.2d at pp. 103-106.) In that case the truck had been backed away from the prior unloading position and was waiting on an access road while the crane operator and the employee of the general contractor moved the crane and the buckets, which were the receptacles furnished by the consignee for the receipt of the load. (See *Entz* v. *Fidelity & Cas. Co., supra,* 64 Cal.2d at p. 383; and *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co., supra,* 229 Cal.App.2d 229, 236.) In the instant case, however, the truck was apparently parked in a position to be loaded with the ice, and the operation, the opening of the doors of the truck and trailer, was one preparatory to loading, and without which it would have been impossible to perform the contemplated icing of the named insurer's produce. It is unreasonable to disassociate the opening of the doors from the loading process.

In *P. E. O'Hair & Co.* v. *Allstate Ins. Co.* (1968) 267 Cal.App.2d 195 [72 Cal.Rptr. 690] (hearing in S.Ct. denied) a divided court[2] ruled that the application of the "complete operation" doctrine[3] extended the coverage afforded a permissive user during the loading of the vehicle to a claim for injuries suffered by the truck driver when the supplier's em-

---

[2]For prior opinion, vacated on rehearing, see (Cal.App.) 70 Cal.Rptr. 614.

[3]The "complete operation" rule as applied to loading and unloading has been adopted and generally followed in this state. (See, *Entz* v. *Fidelity & Cas. Co.* (1966) 64 Cal.2d 379, 382 [50 Cal.Rptr. 190, 412 P.2d 382]; *Home Indem. Co.* v. *Transport Indem. Co.* (1968) 263 Cal.App.2d 100, 105-106 [69 Cal.Rptr. 504]; *Truck Ins. Exchange* v. *Webb* (1967)

ployee negligently released the steel bands on soil pipes piled in the storage yard, preparatory to loading them on the truck. The majority rejected a narrower test suggested in the dissent as follows: " 'The "complete operation" doctrine contemplates that the loading commences when the items of cargo *leave their original location on the way to the vehicle . . .* and that unloading does not cease until the items of cargo have reached the final point of delivery toward which the transportation of the cargo by automobile was a part' (*Risjord, Loading and Unloading,* 13 Vand.L.Rev., 903, 904; italics added.) " (267 Cal.App.2d at p. 202.) The majority opinion suggests that the steps taken to prepare the truck for the actual loading should be deemed a part of that operation. (See Annot. (1964) 95 A.L.R.2d 1122, 1130-1132; and (1941) 160 A.L.R. 1259, 1271-1272.)

*Causation*

The insurer further contends that even if the accident occurred after the process of loading had commenced, the liability for the injuries is not covered by its policy because the injuries did not arise out of the use of the truck.

In *General Acc. Fire & Life Assur. Corp.* v. *Brown* (1962) 35 Ill.App.2d 43 [181 N.E.2d 191] the claimant, an employee of the trucker, had sustained injuries, concededly during the loading process, while stepping from the consignor's loading dock to the truck. He sued the consignor, which in fact had contracted with the trucker for delivery service. The consignor and its insurer sought a declaration that the trucker's insurer should defend the claim after it had refused to do so. The court recognized "that the truck was being 'used' [by the consignor] within the meaning of [the trucker's insurance] policy at the critical moment in question in the sense that it was being 'loaded.' " (35 Ill.App.2d at p. 48.) The court ruled, "But Libby's [the consignor's] use of the truck, as manifested by the loading operation, is not sufficient to invoke for Libby's benefit the coverage of Employers' [trucker's insurance company's] automobile policy. There must be, as contended by defendant, a causal connection between the use of the truck and the injury. Although a number of the cases

256 Cal.App.2d 140, 145 [63 Cal.Rptr. 791]; *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229, 234-235 [40 Cal.Rptr. 165]; *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.* (1951) 106 Cal.App.2d 630, 634-636 [235 P.2d 645]; Annot. (1964) 95 A.L.R.2d 1122, 1129-1130, and (1946) 160 A.L.R. 1259, 1267-1268.)

similar to ours do not contain a discussion of this essential factor, the ones involving a close question of causation point out that the loading and unloading clause, being merely an extension of the 'use' of the vehicle which is covered by the policy, does not invoke the coverage of the policy unless there is the same degree of causal connection between the loading or unloading and the accident as would be required between the actual driving or use of the vehicle itself and a resulting accident. (*Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co.,* 161 P.2d 423, 427; *Maryland Cas. Co.* v. *United Corp. of Massachusetts,* 35 F.Supp. 570, 572; Ann, 160 A.L.R. 1259, 1272). Thus, unless we can determine that the loading of the truck was the efficient and predominating cause of Blakesley's injury, the matter will not come within the terms of Employers' automobile policy.'' (*Id.,* pp. 48-49.)

The court concluded, ''On the record before us we cannot say that Blakesley's injury was caused by the loading of the truck. In his suit Blakesley alleged that his injury was caused solely by Libby's defective dock and their negligence in failing to maintain it. Libby owned and controlled the dock and clearly had sole responsibility for its maintenance. There were no allegations to the effect that Blakesley's carrying of merchandise in any way contributed to his fall, nor that any merchandise or anything connected with the loading operation or the truck itself in any way caused his injury. We are satisfied that the accident was not the result of the loading or use of the truck, but rather was caused directly by some independent factor or intervening cause wholly disassociated with and remote from the use of the truck. The coverage provided under the loading and unloading clause of Employers' policy could not have been intended to apply to such a situation.'' (*Id.,* pp. 49-50. See also *Home Indem. Co.* v. *Allstate Ins. Co.* (9th Cir. 1968) 393 F.2d 593, 595-596; *Handley* v. *Oakley* (1941) 10 Wn.2d 396, 402-408 [116 P.2d 833, 836-838]; and *Caron* v. *American Motorists' Ins. Co. of Chicago, Ill.* (1931) 277 Mass. 156 [178 N.E. 286].)

The Illinois case, and *American Auto Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, from which stems much of the California law on the subject under consideration, both refer to *Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co.* (1945) 108 Utah 500 [161 P.2d 423, 160 A.L.R. 1251]. (See, 35 Ill.App.2d at p. 49; and 106 Cal.App.2d at p. 635.) In the Utah case the court summarized the rules obtained

from a review of the authorities, and as its third and final precept stated, ''There must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought.'' (108 Utah at p. 509 [161 P.2d at p. 427, 160 A.L.R. at p. 1257].)

The paths of decision from this common origin do not, however, coincide. In the California case the court rejected the contention that the vehicle policy did not cover the consignee's liability as an additional insured, because the accident was proximately caused by the employee in charge of the unloading facilities on the consignee's premises. It concluded, ''Such a policy does not require that the injury be a direct and proximate result, in any strict legal sense of that term, of the use of the motor vehicle covered by the policy. [Citations.]'' (106 Cal.App.2d at p. 637. See also, *Entz* v. *Fidelity & Cas. Co., supra,* 64 Cal.2d 379, 387; *P. E. O'Hair & Co.* v. *Allstate Ins. Co., supra,* 267 Cal.App.2d 195, 200; *Home Indem. Co.* v. *Transport Indem. Co., supra,* 263 Cal.App.2d 100, 104-106; *Truck Ins. Exchange* v. *Webb, supra,* 256 Cal. App.2d 140, 144-148; *United States Steel Corp.* v. *Transport Indem. Co., supra,* 241 Cal.App.2d 461, 465-473; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194, 202-203; *City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 55 [320 P.2d 136]; and Annot. (1964) 95 A.L.R.2d 1122, 1146-1153; and (1946) 160 A.L.R. 1259, 1272-1277.)

On the other hand, as noted in *Truck Ins. Exchange* v. *Webb, supra,* ''In Illinois the test for determining the existence of a causal relationship is whether the use of the automobile was the 'efficient and predominating cause.' (*General Acc. Fire & Life Assur. Corp.* v. *Brown,* 35 Ill.App.2d 43 [181 N.E.2d 191, 194]; *Clark* v. *Travelers Indem. Co.* (7th Cir. 1963) 313 F.2d 160; *Bituminous Cas. Corp.* v. *Hartford Acc. & Indem. Co.* (7th Cir. 1964) 330 F.2d 96, 98.) The Illinois rule is similar to the tests suggested by Professor Prosser in determining the existence of cause in fact in a negligence case, namely, whether the defendant's conduct was a 'material element and a substantial factor' in bringing about the injury. (Prosser on Torts (3d ed.), § 41, p. 244.)'' (256 Cal.App.2d at p. 146.)

In *Employers' Liab. Assur. Corp.* v. *Indemnity Ins. Co.* (D.Md. 1964) 228 F.Supp. 896, the court discussed the distinction between policies which contained a loading and unloading clause and those which merely extended coverage to

users (228 F.Supp. at pp. 898-899; and cf. California law, *supra*), and observed a second distinction between the "coming to rest" doctrine and the "complete operation" doctrine. (*Id.*, p. 899.) It then addressed itself to the question of the distinction between "the quantum and type of causation required to render applicable insurance coverage for loss arising from the loading and unloading of a vehicle." (*Id.*) The court concluded, citing among other cases, *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194, that "in 'complete operation' jurisdictions, all that is required to establish coverage is that the act or omission which resulted in the injury was necessary to carry out the loading or unloading." (*Id.*, at p. 900.) In that case the alleged defect was in an overhead door which fell and struck the claimant, who, as in this case, was an employee of the trucker with the surname Ireland. The court distinguished the *General Accident* case, supra, and a similar New York case (*Cosmopolitan Mut. Ins. Co.* v. *Baltimore & Ohio Ry. Co.* (1963) 18 App.Div.2d 460 [240 N.Y.S.2d 88]) because the defect in the door was made operative because of the loading operation, and not incidently at the time of the loading operation. (*Id.*, at p. 90.)

The views expressed in the Illinois and New York cases last referred to were, after a review of numerous cases, crystalized as follows in *Atlantic Mut. Ins. Co.* v. *Richards* (1968) 100 N.J. Super. 180, 185 [241 A.2d 468, 471] : ". . . the sounder result favored by most courts is that automobile liability insurance under a loading and unloading clause should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading was carried out. The risk insured against should be limited to negligence in loading or unloading the automotive vehicle, including preliminary and subsequent measures proximate in time related to its loading or unloading." (100 N.J.Super. at p. 185 [241 A.2d at p. 471].) The cases denying recovery do so on the theory that the act or omission which gives rise to the actionable negligence relates to an instrumentality which is not necessarily related to the loading or unloading process.

This analysis does not bear scrutiny. If the supplier, or consignor or consignee, maintains a loading dock it is as much an instrumentality to be used in loading and unloading as was the defective door in the *Employers' Liab. Assur. Corp.* case (228 F.Supp. 896, *supra*), or the frayed rope in the

*Columbia Southern Chemical Corp.* case (190 Cal.App.2d 194, *supra*). By its presence the loading dock manifests that the entity responsible for its maintenance and existence is planning to use such vehicles as come to the dock for its commercial purposes. Those present there for loading and unloading are using the dock for such purposes, and correlatively all concerned are using the parked vehicle for a like purpose. The fact that any defect in the dock may present a hazard to others who may use it for other purposes should not defeat the connection between the dock and the loading and unloading operation when it in 'fact exists. In the *Richards* case (100 N.J.Super. 180 [241 A.2d 468], *supra*) the New Jersey court recognized that there might be current as distinguished from a prior more passive continuing negligence, if the vehicle were directed to an unsafe area of the loading platform. Another possibility is failure to keep the premises clean and safe during a series of loading and unloading operations. Any defect is not only the result of a prior act or omission, but is also a continuing and current hazard as long as it is maintained unrepaired.

In New York the *Cosmopolitan Mut. Ins. Co.* case (18 App. Div.2d 460 [240 N.Y.S.2d 88], *supra*) has been limited by subsequent decisions. In *Bundschu* v. *Travelers Ins. Co.* (1964) 22 App.Div.2d 907 [255 N.Y.S.2d 529] the court concluded that the liability of the consignee for an injury to a deliveryman which resulted from the crumbling of a cinder block step on which he was standing while unloading grain from his employer's truck into a chickenhouse, was covered by the insurance on the consignor's truck. In *Continental Cas. Co.* v. *Duffy* (1966) 26 App.Div.2d 630 [272 N.Y.S.2d 470], the court found that there was a direct causal connection between the unloading of the truck and an accident occasioned when cellar doors blew over, because of lack of a crossbar to hold them securely, and hit the deliveryman on the head. Should the result be different if the cellar step, or the platform leading to it collapsed?

██ It is concluded that an injury resulting from the failure of the consignor or consignee, who is using a vehicle for loading or unloading, to maintain a safe place for that activity is an act or omission which has a causal relationship to the use of the vehicle within the meaning of the California decisions. This conclusion is buttressed by the philosophy expressed in the *P. E. O'Hair & Co.* case, that the question of coverage

must be considered from the viewpoint of a negligent act or omission which caused injury to a third party who could find no party able to respond to a judgment other than the owner of the vehicle and its insured. (267 Cal.App.2d at p. 198.) This would be the case if the claimant, while preparing the truck and trailer for loading, fell because of a defect in the dock and struck an innocent third person.

*Employee Exclusion*

The defendant's policy provides:

"EXCLUSIONS This policy does not apply: . . . to damages because of bodily injury, sickness, disease or death sustained by an employee (except domestic) of the insured arising out of and in the course of his employment, except liability assumed under written contract other than an agreement between the insured and an employee or his representative; or (2) to any obligation for which the insured or any company as his insurer may be held liable under any Workmen's Unemployment Compensation, Disability or similar law; . . ."

The insurer recognizes that in this state the phrase "an employee . . . of the insured" as used in an exclusion clause "applies only when the injured party was employed by the *particular* insured, named *or* additional, who seeks the protection of the policy." (*Campidonica* v. *Transport Indem. Co.* (1963) 217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735]. See also, *United States Fire Ins. Co.* v. *Transport Indem. Co.* (1966) 244 Cal.App.2d 110, 116-117 [52 Cal.Rptr. 757]; *United States Steel Corp.* v. *Transport Indem. Co., supra,* 241 Cal.App.2d 461, 473-474; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126, 133-135; *Maryland Cas. Co.* v. *New Jersey Mfrs. Cas. Ins. Co.* (1958) 28 N.J. 17, 19-20 [145 A.2d 15, 16-17]; and Annot. (1956) 50 A.L.R.2d 78, 97-99; but cf. *Travelers Indem. Co.* v. *Colonial Ins. Co.* (1966) 242 Cal.App.2d 227, 234-235 [51 Cal.Rptr. 724].)

The stipulated facts reflect that both the produce company trucker and the insurance company are Washington corporations, and that the policy was issued in that state. In *Associated Indem. Corp.* v. *Wachsmith* (1940) 2 Wn.2d 679 [99 P.2d 420, 127 A.L.R. 531], the court held that the exclusion of claims "of any employee of the Insured" applied to exclude coverage to a permissive user, as an additional insured, for a claim made by an employee of the named insured. The policy

in that case reportedly provided, " 'The unqualified term "Insured" shall include *every person entitled to protection hereunder . . .' "* (Italics the Washington court's.) (2 Wn. 2d at p. 687 [99 P.2d at p. 423].) It may be assumed, without deciding, that the Washington court would reach a similar conclusion with respect to the construction of the varying but somewhat similar language of the policy in evidence in this case. (*Supra*, p. 4.)

The insurer insists that the Washington law should be applied to give effect to the exclusion in this case. (See, *New England Mut. Life Ins. Co.* v. *Lauffer* (S.D.Cal. 1963) 215 F.Supp. 91, 97-99.) The case upon which the insurer relies applies the provisions of Civil Code section 1646 which read: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

■ The insurer's argument fails to consider the following rule: "The law of the place of performance of an insurance contract controls as to its legal construction and effect, but that of the place where made governs on all questions of execution and validity [citation], unless the terms of the contract provide otherwise or the circumstances indicate a different intention. ■ In this case, the circumstances do not indicate that in the matter of the interpretation of the contract, the parties intended to be restricted to the laws of the State of Washington, where the contract was consummated by the delivery of the policy." (*Blair* v. *New York Life Ins. Co.* (1940) 40 Cal.App.2d 494, 499 [104 P.2d 1075].) It was contemplated that the policy would be effective and might have to be performed outside the State of Washington.[4] The law of this state in interpreting the policy will govern the extent of the coverage with respect to losses occurring within this state. (See *Wildman* v. *Government Emp. Ins. Co.* (1957) 48 Cal.2d 31, 40 [307 P.2d 359].)

The judgment is reversed with directions to the trial court

---

[4]Paragraph 11 of the "Conditions" of the policy reads: "11. *Financial Responsibility Laws*. Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of automobiles during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy."

to amend its findings of fact and conclusions of law and enter a judgment declaring the relative and respective rights and obligations of the parties to this action in accordance with the views expressed in this opinion.

Molinari, P. J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 4, 1969. McComb, J., was of the opinion that the petition should be granted.