[Civ. No. 36342. Second Dist., Div. Two. Apr. 2, 1971.]

MARTIN V. SMITH et al., Plaintiffs and Respondents, v.
NATIONAL UNION INSURANCE COMPANY,
Defendant, Cross-complainant and Appellant;
INSURANCE COMPANY OF NORTH AMERICA,
Cross-defendant and Respondent.

**COUNSEL**

Culliton & Hunter and Daniel J. Culliton for Defendant, Cross-complainant and Appellant.

Archbald, Zelezny & Spray and Kenneth L. Moes for Plaintiffs and Respondents.

No appearance for Cross-defendant and Respondent.

**OPINION**

**HERNDON, J.**—This is an appeal by defendant National Union Insurance Company from a judgment in favor of plaintiffs Smith and the cross-defendant Insurance Company of North America in an action for declaratory relief. ■ The basic question presented for the trial court's decision was whether or not plaintiffs Smith, the consignees of a shipment of liquor which was being unloaded from a truck upon premises maintained by them, were additional insureds under the trucker's policy (issued by appellant as insurer) with respect to an injury sustained by the trucker's employee as the result of the negligent maintenance of plaintiffs' premises.

The trial court sustained the contention advanced by plaintiffs and by Insurance Company of North America, their insurer, that plaintiffs were "users" of the truck during the course of its unloading and therefore were additional insureds under the policy issued by appellant to the owner of the truck and hence that the injuries sustained by the truck driver during the

unloading of the insured vehicle were covered by appellant's policy. We have concluded that this determination was erroneous and that the judgment must be reversed.

The determinative issues of law in this case are precisely the same as those recently decided by the Supreme Court of California in *International Business Machines Corp.* v. *Truck Ins. Exch.,* 2 Cal.3d 1026 [89 Cal. Rptr. 615, 474 P.2d 431], wherein it was held (1) that the mere maintenance of premises used for loading or unloading is not in itself a sufficient basis upon which to find the shipper a user of a truck being unloaded; and hence that the shipper is not an additional insured under the trucker's policy with respect to an injury sustained by the trucker's employee as the result of the negligent maintenance of the shipper's premises; (2) that the use of a motor truck includes its loading and unloading, and consequently there is no discernible difference in scope between insurance policies that expressly include loading and unloading and those that refer to the use of a vehicle which includes the complete operation of pick up and delivery; and (3) that the obligation for the proper maintenance of premises used for purposes of loading and unloading rests with the owner of such premises.

We deem it unnecessary to lengthen this opinion with a detailed repetition of the facts as recited in the *IBM* decision. It suffices for present purposes to state our conclusion that in all substantial respects the operative facts in the *IBM* case are practically identical to the undisputed facts of the case at bench as reflected in the agreed statement upon which the cause was submitted. We shall recite the facts substantially as they are set forth in the agreed statement.

### Statement of the Facts

On August 23, 1967, Donald Lee Ruiz was employed by Bohemian Distributing Company as a liquor delivery man. His job on said date was to deliver goods to various stores and lounges in the Oxnard area, including the Colonial House. The Smiths, plaintiffs herein, were the owners and operators of the Colonial House. Ruiz was, on that date, the authorized operator of a 1962 GMC truck owned by his employer and used in making liquor deliveries. The claimant had been delivering liquor to the Colonial House for this and prior employers for five or six years. Ruiz, at his deposition, described the delivery procedure at the "Colonial House" as follows:

"The only way that you could deliver on the type of truck that I had was to go around the corner and into the parking lot, because there was a high bed, and you couldn't get in any other way. The best way I found to deliver was to back my truck in as close as possible, and off-load the

cases onto the ground off the truck, and dolly them towards this passageway that was located—let's see. How would I phrase that? Well, they had a storage space for it, but you had to go through a passageway. Usually you would have the man that was in charge of the storage space who would be there at certain times, or else you would have to go up and get him, but you would leave the merchandise in front of the storage space, and sometimes you would have to go up to the office and ask to have the man open it up, but there was a long passageway that you had to hand-truck through, . . ."

At approximately 11 a.m. on August 23, 1967, Ruiz went to the "Colonial House" where he was to deliver 25 cases of vodka. He followed his usual procedure, including off-loading cases from the truck to a hand-truck or dolly furnished by his employer. The handtruck would hold five cases of liquor stacked one atop the other. When stacked to this height, Ruiz could not see over the boxes. The only way he could see ahead of him as he wheeled the handtruck loaded in this manner was by looking past the liquor cases on either side. Ruiz delivered 20 of the cases of liquor to the storage area in four separate trips via the "passageway" or hallway described above. On each of these four occasions, after leaving the liquor cases at the storage area, Ruiz returned to his truck with the empty handtruck via the same "passageway." Each of these trips was without incident. After placing the last five cases of liquor on the hand-truck, Ruiz proceeded again toward the storage area. Partway through the "passageway" Ruiz claims to have slipped and he fell backward to the floor with the handtruck and the cases of liquor falling on top of him. According to the allegations of his complaint, Ruiz suffered a "severe wrenching of the lower part of his back and hips."

On January 12, 1968, Ruiz filed an action in the Superior Court of Ventura County for personal injuries against the Smiths, plaintiffs herein, the owners of Colonial House, seeking recovery of damages for the injuries allegedly sustained by him in the above described accident. In his complaint Ruiz alleged as follows:

"That at the time of said accident hereinafter referred to, to-wit, as of about August 23, 1967, at about the hour of 11:30 a.m. [Ruiz] was an employee of the Bohemian Distributing Co., of Santa Barbara, California, and was upon the above referred to premises in the course of his employment delivering cases of liquor to said Colonial House, at the special request and instance of the [Smiths]; that in accord with directions given to him by [the Smiths], [Ruiz] parked the delivery truck he was driving in the rear of said Colonial House, and using a hand truck loaded five cases of liquor upon said hand truck, and moved them into a hallway leading from the rear of the premises toward a storage room, all in accord with the

direction of [the Smiths]; that while moving said hand truck so loaded along said hallway toward said storage room, [Ruiz] was, through the negligence of [the Smiths], and as a proximate result thereof, caused to slip and fall violently to the floor in such manner that said hand truck came down upon top of him and [Ruiz's] back was caused to hit the hard cement floor with great force and violence, as a result of which, and as a direct and proximate result of the negligence of [the Smiths], [Ruiz] suffered the injuries hereinafter described. . . .

"That [the Smiths] so operated, kept and maintained said premises in a careless and negligent manner upon the occasion of said accident in the following respects, to-wit:

"That along a portion of said hallway through which [Ruiz] was required to pass, the [Smiths] kept certain ice machines, and that [the Smiths] allowed an overflow of crushed ice and cubed ice to be scattered and left upon the floor of said hallway; that the only way for [Ruiz] to have reached said storage room with his supplies intended for the use of [the Smiths] was through and over said ice; that said ice was allowed to be upon said floor through the carelessness and negligence of [the Smiths], and that the said carelessness and negligence was the proximate cause of [Ruiz] being injured; that said hallway was not properly illuminated; that no warning signs were posted; that no warning of any kind of the dangerous and unsafe condition of said hallway was given to [Ruiz] at any time; that by reason of said negligence aforesaid, and as a proximate result thereof [Ruiz] was caused to slip and fall as above set forth, and was caused to be thrown violently to the floor, and thereby, and as a proximate result of said negligence received the injuries hereinafter mentioned."

In our recent decision in *Camay Drilling Co.* v. *Travelers Indem. Co.*, 12 Cal.App.3d 237, 240 [90 Cal.Rptr. 710], we commented as follows with reference to the decision of the Supreme Court in *International Business Machines Corp.* v. *Truck Ins. Exch., supra*, 2 Cal.3d 1026: "That decision enunciates a sensible limitation upon the proper application of the 'use' concept in determining the extent of insurance coverage for the permissive use of motor vehicles. Its reasoning exposes the unrealistic and unjust effects of further extending this concept to the point where it operates to transfer liability from the negligent entity to the insurer for the innocent entity—especially in cases in which the motor vehicle was only a peripheral, inactive or incidental factor."

Since it appears that the Smiths were the owners of the Colonial House and the persons responsible for the maintenance of the premises upon which the truck driver was injured, and since the claim of the truck driver is based solely and squarely upon his allegation that his injuries were

proximately caused by plaintiffs' negligent maintenance of their premises, it is obvious that the *IBM* case is "on all fours." The following from that decision at page 1032 sufficiently indicates its controlling effect:

"Furthermore, the obligation for the proper maintenance of the loading dock rests with its owner. A holding that IBM is a 'user' of the truck and that the trucker's carrier should meet the loss would free the dock owner from responsibility for the maintenance of its own premises, and fasten liability upon the insurance carrier whose insured was the least culpable. Almost all of the cases presenting the issue of 'use' of the vehicle by the shipper involved disputes between two insurance companies, as does this case, and a holding that the shipper constitutes a 'user' of the vehicle generally results in a transfer of all or part of the ultimate liability from the insurer for the negligent entity to the insurer of an innocent entity. Such a ruling secures for the shipper an insurance rate disproportionately low relative to the hazards of his business and may ultimately tend to discourage the shipper from exerting due care in the maintenance of the premises. Moreover, the injured person in these cases is almost always an employee of the trucker, acting within the course of his employment, and thus entitled to workmen's compensation for his injuries as well as to his tort action against the negligent shipper. So far as we have discovered, the combination of injury to a third party and a possibly financially irresponsible shipper has occurred in only one reported case, *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543 [19 Cal.Rptr. 558].

"We therefore hold that the mere maintenance of premises used for loading or unloading is not in itself a sufficient basis upon which to find the shipper a 'user' of the vehicle; language to the contrary in *Shippers Dev. Co.* v. *General Ins. Co. of America, supra,* 274 Cal.App.2d 661 [79 Cal. Rptr. 388], is disapproved."

These valid and realistic considerations were discussed and applied in the well reasoned decision in *Pacific Indem. Co.* v. *Truck Ins. Exch.,* 270 Cal.App.2d 700, 703-705 [76 Cal.Rptr. 281]. The cited decisions are controlling in the case at bench. Respondents' allegations to the contrary notwithstanding, it is clear from the agreed statement that the Smiths neither participated in the unloading of the truck nor supervised the operation in any such manner as to avoid the application of the law enunciated in the *IBM* decision.[1]

---

[1]In fairness to the trial judge, it should be noted that both *International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d 1026, and *Camay Drilling Co.* v. *Travelers Indem. Co., supra,* 12 Cal.App.3d 237, were decided after the trial of the instant case. In view of the trend of decisions prior to *IBM* and in view of the lan-

Respondents' reliance upon the recent decision in *Indemnity Ins. Co. v. Pacific Clay Products Co.,* 13 Cal.App.3d 304 [91 Cal.Rptr. 452], is misplaced. The stipulated facts in that case indicated that the agent of the construction company not only directed the truck driver and a helper to the place where the truck was to be unloaded, but personally accompanied them to the scene of the accident and there, as the decision of the Court of Appeal recites at page 309, said agent "without warning respecting the presence of the overhead high voltage power line, directed [the driver] to relocate the pipe at the place beneath the power line where the accident occurred; and in unloading the pipe at that place [the driver and his helper] were acting in response to the directions given them by [said agent]." In the case at bench, as we have stated, there was no such direct participation by the owners of the premises in the unloading process as to constitute them users of the truck.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

The petition of the plaintiffs and respondents for a hearing by the Supreme Court was denied May 26, 1971.

---

guage of *Shippers Dev. Co.* v. *General Ins. Co.,* 274 Cal.App.2d 661 [79 Cal.Rptr. 388], disapproved in *IBM,* the trial court's decision in this case was not unreasonable at the time it was made.