2 Cal.3d 1026 (1970)
474 P.2d 431
89 Cal. Rptr. 615
INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff and Appellant,
v.
TRUCK INSURANCE EXCHANGE, Defendant, Cross-complainant and Respondent; ZURICH INSURANCE COMPANY, Cross-defendant and Appellant.
Docket No. S.F. 22725.
Supreme Court of California. In Bank.
August 7, 1970.
*1027 COUNSEL
Russ & Benson and Wilbur J. Russ for Plaintiff and Appellant and for Cross-defendant and Appellant.
Sim & Solomon and Gabriel W. Solomon as Amici Curiae on behalf of Plaintiff and Appellant and Cross-defendant and Appellant.
Campbell, Custer, Warburton & Britton and Alfred B. Britton, Jr., for Defendant, Cross-complainant and Respondent.
OPINION
TOBRINER, J.
Sheldon Hatton, an employee of Red Line Carriers (hereinafter Red Line), while moving a desk, slipped on an eraser on the floor of *1028 the loading dock of the International Business Machines Corporation (hereinafter IBM) and sustained personal injuries. Hatton's suit against IBM precipitated the present dispute over insurance coverage between Truck Insurance Exchange (hereinafter Truck), Red Line's insurer, and Zurich Insurance Company (hereinafter Zurich), IBM's carrier. The trial court found that the Truck policy provided no coverage for the incident, and these appeals followed.
(1a) We hold that IBM's maintenance of the loading dock does not in itself convert IBM into a "user" of the Red Line truck; hence IBM is not an additional insured under the Truck policy. This conclusion accords with the trial court judgment and disposes of the case.
On October 1, 1963, two employees of Red Line, John Mazzullo and Sheldon Hatton, drove a Red Line truck to the IBM premises. During the morning, pursuant to IBM's instructions, they moved various pieces of furniture and equipment around those premises. About 3 p.m. the IBM coordinator directed them to move a chair and desk from IBM Building 25 to the Red Line warehouse. They drove the truck to Building 25, entered the premises, placed the desk on a Red Line dolly, and wheeled it to the receiving area. Mazzullo pulled the desk from the front; Hatton pushed from the rear. When they had gone about two-thirds of the distance across the receiving area toward the truck, Hatton slipped on an eraser on the floor, fell, and sustained injuries. The eraser was of the type used by IBM, and not the type used by Red Line's employees. For purposes of this action we must assume that Hatton's injuries resulted from the negligence of an IBM employee.
Red Line carried its insurance with Truck; IBM with Zurich. IBM tendered the defense of Hatton's action to Truck, which denied coverage. IBM then brought this action for declaratory relief; Truck cross-complained against Zurich to determine which policy provided primary coverage. The trial court found that Hatton's injuries did not arise out of the "use" of the Red Line truck by IBM, that the Truck policy did not cover IBM as an additional insured, and that, therefore, IBM was not entitled to defense under that policy.
The Truck policy does not extend coverage to permissive users. Vehicle Code section 16451, however, provides that a motor vehicle liability policy must insure not only the owner, but "any other person ... using [the] ... motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle...." (Italics added.) Truck concedes that such coverage is incorporated by law *1029 in every motor vehicle policy. (See Wildman v. Government Emp. Ins. Co. (1957) 48 Cal.2d 31, 39-40 [307 P.2d 359]; Pacific Indem. Co. v. Truck Ins. Exchange (1969) 270 Cal. App.2d 700, 702 [76 Cal. Rptr. 281].)
(2) The "use" of a vehicle includes its loading and unloading.[1] (Shippers Dev. Co. v. General Ins. Co. of America (1969) 274 Cal. App.2d 661, 666 [79 Cal. Rptr. 388]; General Pump Service, Inc. v. Travelers Ins. Co. (1965) 238 Cal. App.2d 81, 86 [47 Cal. Rptr. 533].) Such "use" includes the complete operation of pickup and delivery. (See Entz v. Fidelity & Cas. Co. (1966) 64 Cal.2d 379, 382-384 [50 Cal. Rptr. 190, 412 P.2d 382]; P.E. O'Hair & Co. v. Allstate Ins. Co. (1968) 267 Cal. App.2d 195, 197 [72 Cal. Rptr. 690].) In Shippers Dev. Co. v. General Ins. Co. of America, supra, the injury occurred when the truck driver opened the rear doors of the truck before loading; in P.E. O'Hair & Co. v. Allstate Ins. Co., supra, it occurred while the driver and shipper were removing bands from pipe preparatory to loading. In both cases the court found the loading operation had commenced. In the present case Hatton and Mazzullo were moving the desk to the truck for loading, and under the "complete operations" rule their actions constitute part of the loading operation, and thus of the use of the truck.
Although Hatton and Mazzullo were thus engaged in the loading of the truck, neither of them served as an agent or employee of IBM. In the language of Entz v. Fidelity & Cas. Co. (1966) 64 Cal.2d 379, 385 [50 Cal. Rptr. 190, 412 P.2d 382], the question, then, is "not whether the accident occurred during the unloading, but, rather, whether the injury arose out of the use of the vehicle." Did IBM, the shipper, become a "user" of the truck by reason of the fact it maintained the loading dock?
In certain circumscribed situations, the courts have held that the shipper[2] is a user of the truck. Thus, the shipper becomes a user of the truck if its own employees participate in the loading or unloading (P.E. O'Hair & Co. v. Allstate Ins. Co., supra, 267 Cal. App.2d 195, 199; United States Steel Corp. v. Transport Indem. Co. (1966) 241 Cal. App.2d *1030 461 [50 Cal. Rptr. 576]), or if its employees supervise the operation (American Auto. Ins. Co. v. Transport Indem. Co. (1962) 200 Cal. App.2d 543, 551). If the shipper assumes the responsibility of directing the operation, it is a user of the vehicle even though the injury results from its negligent failure to carry out its responsibility. (American Auto. Ins. Co. v. Transport Indem. Co., supra, 200 Cal. App.2d 543, 555; California Steel Buildings, Inc. v. Transport Indem. Co. (1966) 242 Cal. App.2d 749, 755-756 [51 Cal. Rptr. 797].) When the injury results from a defect in the shipper's equipment which is actively used in the loading or unloading operation, California cases have found such usage sufficient to make the shipper or receiver a user under the trucker's policy.[3]
The concept that the mere presence of a loading dock, without more, converts the shipper who loads there into a "user" of the truck is a somewhat metaphysical one; presumably the dock serves as a physical invitation to load or unload, and upon acceptance by the trucker the shipper becomes the "user" of the truck. Although we can see the efficacy of the fiction if some further element is added, such as the active use of the shipper's equipment, participation of the shipper's personnel in the loading operation, or the shipper's direction of that operation, the reality of the situation makes it difficult to press the dock itself into the medium for dubbing the shipper as the truck user. To hold that the presence of the loading dock constitutes such "use," would be simply an exercise in "mental gymnastics" (American Home Assur. Co. v. State Farm Mut. Auto. Ins. Co. (1969) 1 Cal. App.3d 355, 357 [81 Cal. Rptr. 732]) far removed from the ordinary meaning of the concept of "use" of the vehicle.
Such a limitation on the concept of "use" of the loading area finds expression in the recent decision in American Home Assur. Co. v. State Farm Mut. Auto. Ins. Co., supra, 1 Cal. App.3d 355. In that case a Mrs. Crawford was engaged in unloading boxes from her station wagon parked on the parking lot of McColl's Dairy when she slipped and fell because of a defect in the parking lot surface. Mrs. Crawford clearly was unloading, and thus "using," her station wagon; further, the dairy presumably maintains the parking lot in part to facilitate such loading and unloading. The dairy argued that by its maintenance of the lot it was a "user" of the station wagon and that therefore Mrs. Crawford's automobile liability policy covered *1031 the dairy for the injury to Mrs. Crawford. The Court of Appeal, however, properly rejected that contention, holding that "[t]he condition of the premises here was static, not actively in use in the unloading process.... A passive, dangerous and defective condition of the premises upon which the automobile is parked is not to be conjured into `the actual use of such automobile.'" (Pp. 357-358.)
Although the Court of Appeal in Shippers Dev. Co. v. General Ins. Co. of America (1969) 274 Cal. App.2d 661 [79 Cal. Rptr. 388], and two decisions of the New York Appellate Division[4] have held that maintenance of a loading area transforms the shipper into a user of the vehicle, the majority of decisions support our conclusion that the concept of "use" of the vehicle cannot be stretched to such lengths.[5] The cases were summarized in Atlantic Mut. Ins. Co. v. Richards (1968) 100 N.J. Super. 180 [241 A.2d 468, 470-471]: "... opinions tend to divide in their holdings according to whether the tort charged was an act or omission in the process of loading or unloading or in the maintenance of the loading or unloading premises.... [T]he sounder result favored by most courts is that automobile liability insurance under a loading and unloading clause should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading was carried out. The risk insured against should be limited to negligence in loading or unloading the automotive vehicle, including preliminary and subsequent measures proximate in time related to its loading or unloading."[6]
*1032 (3) Furthermore, the obligation for the proper maintenance of the loading dock rests with its owner. A holding that IBM is a "user" of the truck and that the trucker's carrier should meet the loss would free the dock owner from responsibility for the maintenance of its own premises, and fasten liability upon the insurance carrier whose insured was the least culpable. Almost all of the cases presenting the issue of "use" of the vehicle by the shipper involved disputes between two insurance companies, as does this case, and a holding that the shipper constitutes a "user" of the vehicle generally results in a transfer of all or part of the ultimate liability from the insurer for the negligent entity to the insurer of an innocent entity. Such a ruling secures for the shipper an insurance rate disproportionately low relative to the hazards of his business and may ultimately tend to discourage the shipper from exerting due care in the maintenance of the premises. Moreover, the injured person in these cases is almost always an employee of the trucker, acting within the course of his employment, and thus entitled to workmen's compensation for his injuries as well as to his tort action against the negligent shipper. So far as we have discovered, the combination of injury to a third party and a possibly financially irresponsible shipper has occurred in only one reported case, American Auto. Ins. Co. v. Transport Indem. Co. (1962) 200 Cal. App.2d 543 [19 Cal. Rptr. 558].
(1b) We therefore hold that the mere maintenance of premises used for loading or unloading is not in itself a sufficient basis upon which to find the shipper a "user" of the vehicle; language to the contrary in Shippers Dev. Co. v. General Ins. Co. of America, supra, 274 Cal.2d 661, is disapproved.
The judgment is affirmed.
Wright, C.J., McComb, J., Peters, J., Burke, J., and Sullivan, J., concurred.
NOTES
[1] Consequently we discern no difference in scope between policies which expressly include "loading and unloading" and those which refer to "use" of the vehicle. Although some cases have stated that a "loading and unloading" clause is "an extension, rather than a limitation, on the meaning of the term `use of an automobile'" (Truck Ins. Exchange v. Webb (1967) 256 Cal. App.2d 140, 144-145 [63 Cal. Rptr. 791]), the practical effect of the different clauses is negligible under the California authorities; no case presents or suggests any factual setting in which the difference in wording could affect the legal result.
[2] The term "shipper," as used herein, refers to the originator of the shipment in cases of injuries during the loading process, and to the receiver of the shipment in cases of injuries during unloading.
[3] Columbia Southern Chemical Corp. v. Manufacturers & Wholesalers Indem. Exchange (1961) 190 Cal. App.2d 194, 204 [11 Cal. Rptr. 762]; American Auto. Ins. Co. v. American Fid. & Cas. Co. (1951) 106 Cal. App.2d 630, 637-638 [235 P.2d 645]; see P.E. O'Hair & Co. v. Allstate Ins. Co., supra, 267 Cal. App.2d 195 (both negligence in loading method and participation by shipper's employee); but cf. Pacific Indem. Co. v. Truck Ins. Exch., supra, 270 Cal. App.2d 700 (defect in chain hoist used to repair vehicle; although owner of equipment not held liable the case does not involve loading and unloading).
[4] Continental Cas. Co. v. Duffy (1966) 26 App.Div.2d 630 [272 N.Y.S.2d 470]; Carr Packing Co. v. Frank (1966) 49 Misc.2d 74 [266 N.Y.S.2d 633].
[5] See Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. Co. (1963) 18 App.Div.2d 460 [240 N.Y.S.2d 88]; Brooklyn Eastern Dist. Terminal v. Phoenix of Hartford Ins. Co. (1966) 26 App.Div.2d 627 [272 N.Y.S.2d 443], revd. on other grounds 19 N.Y.2d 730 [279 N.Y.S.2d 184, 225 N.E.2d 889]; Atlantic Mut. Ins. Co. v. Richards (1968) 100 N.J. Super. 180 [241 A.2d 468]; General Acc. Fire & Life Assur. Corp. v. Brown (1962) 35 Ill. App.2d 43 [181 N.E.2d 191].
[6] Red Line's insurer, Truck, also contends that even if IBM was a user of the truck, the injury to Hatton was not caused by IBM's use. As we noted in Entz v. Fidelity & Cas. Co. (1966) 64 Cal.2d 379, 385 [50 Cal. Rptr. 190, 412 P.2d 382]: "although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use."

The nature of the necessary causal connection has not been further defined in our cases. Truck suggests a test formulated in General Accident Fire & Life Assur. Corp. v. Brown, supra, 35 Ill. App.2d 43 [181 N.E.2d 191, 194]: that the use of the vehicle must be the "efficient and predominating cause" of the injury. That language, however, does nothing but obscure matters. Taken literally, an efficient cause is one which produces its effect with maximum economy, and a predominating cause is one which overweighs a subordinate cause; neither concept has any relevance to the facts of General Accident or of the present case. Taken figuratively, General Accident appears to hold that a causal connection greater than mere coincidence in time and space, but not necessarily amounting to proximate cause, is required, which is approximately what we said in Entz.
In the instant case the task of finding the requisite causal connection presents no problem. IBM's only arguable participation in loading the truck lies in its maintenance of the loading area, and the injury arose from the negligent maintenance. If maintenance of the loading dock makes IBM a user of the truck, the injury plainly arose out of that use; if IBM is not a user the question of cause does not arise.