Rex A. KOHL and Tony L.
Martino, Petitioners,

v.

UNION INSURANCE COMPANY, a
Nebraska corporation, Respondent.

Carol Sue CONNELLY, Petitioner,

v.

UNION INSURANCE COMPANY, a
Nebraska corporation, Respondent.

Nos. 84SC381, 84SC387.

Supreme Court of Colorado,
En Banc.

Dec. 22, 1986.

Rehearing Denied Feb. 9, 1987.

McDermott, Hansen, Anderson & Reilly,
Leland P. Anderson, Denver, for petition-
ers Rex A. Kohl and Tony L. Martino.

McDermott, Kiehnhoff & Meconi, John
A. McDermott, Canon City, for petitioner
Carol Sue Connelly.

Hall & Evans, Richard A. Hanneman,
Gordon L. Vaughan, Denver, for respon-
dent.

ERICKSON, Justice.

We granted certiorari to review the court
of appeals decision in *Union Insurance
Co. v. Connelly,* 694 P.2d 354 (Colo.App.
1984), which affirmed a trial court determi-
nation that the accidental discharge of a
rifle did not arise from the use of the
insured's vehicle for purposes of coverage

under an automobile insurance policy. We reverse and remand with directions.

## I.

The facts are not in dispute. On October 12, 1980, Carrol Ray Weaver, Phyllip Connelly, Terry Clear, Rex Kohl, and Tony Martino were returning from a hunting trip in the mountains west of Canon City, Colorado. Kohl and Martino were in one vehicle, Connelly and Clear in another, and Weaver in a third. Weaver's hunting rifle was in a gun rack mounted above the dashboard of his jeep.

On the road back to Canon City, the group stopped for refreshments at a store in Cotopaxi, Colorado. When Weaver arrived, the other hunters had left their vehicles and were conversing in the parking lot. Weaver parked his jeep alongside the other hunters, and joined the group. After a short conversation, Weaver returned to his jeep to retrieve a gas can.

While reaching inside the jeep to get his key to the gas cap, Weaver decided to remove his rifle from the gun rack, unload it, and secure it in a scabbard for the trip home. As Weaver removed the weapon from the gun rack, the rifle discharged. Kohl and Martino were seriously injured, and Connelly was killed.

Kohl, Martino, and the estate of Connelly filed claims with Weaver's automobile insurance carrier, Union Insurance Co. (Union). In response, Union filed this action for declaratory judgment to determine whether the accident was covered by Weaver's insurance. After limited discovery, all parties filed motions for summary judgment. The trial court granted Union's motion, and held that the claimants' injuries were not sufficiently related to Weaver's use of his automobile to support the claims filed with Union. The court of appeals affirmed and concluded that the injuries

arose out of the use of the rifle, rather than the use of the automobile. The claimants petitioned for certiorari, and we consolidated the cases for review.

## II.

Weaver's automobile insurance liability policy provides that Union "will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." A covered person is defined in the policy as "[the insured] or any family member for the ownership, maintenance or use of any auto or trailer." Weaver's policy therefore embraces the statutorily required minimum level of coverage set forth in section 42–7–413(c), 17 C.R.S. (1984):

> *The policy of liability insurance shall insure every [insured] person on account of the maintenance, use, or operation of the motor vehicle ... against loss from the liability imposed by law; for damages, including damages for care and loss of services arising from such maintenance, use, or operation to the extent and aggregate amount, exclusive of interest and costs, with respect to each such motor vehicle, in the amounts specified in section 42–7–103(2).*[1]

(Emphasis added.)

An accident occurs "on account of the use of a motor vehicle" if the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose. *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972); *Mason v. Celina Mutual Insurance Co.*, 161 Colo. 442, 423 P.2d 24 (1967). To establish the requisite causal relationship, the claimant must establish that the accident would not have occurred but for the vehicle's use.[2] *Titan Construction Co. v. Nolf*, 183

1. The claimants assert that the term "auto accident" as used in Weaver's policy provides greater coverage than that required by section 42–7–413. Because we base our decision on the minimum level of coverage set forth in section 42–7–413, we do not construe the terms of Weaver's policy.

2. Contrary to the dissent's suggestion, the claimants cannot prevail if they fail to establish a causal connection between the vehicle's use and the accidental shooting. A causal connection exists if the claimants prove that the accident would not have occurred but for a conceivable use of the vehicle that is not foreign to its

Colo. 188, 515 P.2d 1123 (1973). *See also, Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227, 230 (Colo.1984). The claimant need not establish that the accident occurred while the vehicle was moving, or that the vehicle was the sole cause of the accident; it is sufficient that the claimants demonstrate that the injury "originated in," "grew out of," or "flowed from" a use of a vehicle. *Azar v. Employers Casualty Co.,* 178 Colo. at 61, 495 P.2d at 555 (citations omitted).

■ Union asserts that transportation of a rifle for the purpose of hunting is not a use within the inherent purpose of Weaver's jeep. We do not agree. The transportation of hunters and their weapons to areas where they can pursue their sport is undeniably a conceivable use of a four-wheel-drive vehicle. A jeep is specially designed to perform on the rugged terrain often associated with hunting areas, and Weaver had installed a gun rack in his vehicle to facilitate that use of his jeep. This case is therefore distinguishable from those in which an automobile was used for a purpose foreign to its design. *See, e.g., Norgaard v. Nodak Mutual Insurance Co.,* 201 N.W.2d 871 (N.D.1972) (the insured's use of his parked vehicle as a gun rest was not a covered use within the meaning of the insured's automobile policy); *Hutchins v. Mills,* 363 So.2d 818 (Fla. App.1978) (an automobile liability insurance policy did not provide coverage for the accidental shooting of another while the insured was standing in the bed of his parked truck), *cert. denied,* 368 So.2d 1368 (Fla. 1979). We therefore hold that Weaver's use of the jeep for transportation and to carry his weapon for hunting purposes is a covered use that may form the basis of a compensable claim.

Union also contends that Weaver's use of his jeep was not causally related to the rifle's accidental discharge. We disagree. In *Titan Construction Co. v. Nolf,* 183 Colo. 188, 515 P.2d 1123 (1973), we held that an insurer was liable to a worker who was injured during the unloading of a cement truck when a pipe connected to the truck knocked a brick off the roof of a building under construction. We stated:

> [Causation exists] if the accident would not have occurred except for the unloading of the insured vehicle.... We do not hold that the "but for" doctrine should apply when there is a lack of relationship between the truck and the accident. We suppose that, at least until further cases are determined by the Court of Appeals and this court, the sufficiency of the causative relationship must be made on an ad hoc basis. We hold that there was a sufficient relationship here.

We correctly noted in *Titan Construction Co.* that there is a distinction between injuries that are related to the use of an automobile, and injuries that are related to an automobile only because they coincidentally occurred in the vehicle. That distinc-

inherent purpose. *See Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984); *Titan Construction Co. v. Nolf,* 183 Colo. 188, 515 P.2d 1123 (1973). The test is well established in Colorado, and represents the clear majority view. *See* 1 R. Long, *Law of Liability Insurance* § 1.24 at 1–105 (1986).

In *Dairyland Insurance Co. v. Drum,* 193 Colo. 519, 568 P.2d 459 (1977), we recognized that courts in other jurisdictions have applied six different tests to determine whether a causal connection exists between an injury and a use of the insured vehicle:

(1) The dangerous situation causing injury must have its source in the use of the automobile; (2) The chain of events resulting in the accident must originate in the use of the automobile and be unbroken by the intervention of any event which has no direct or substan-

tial relation to the use of the vehicle; (3) The accident must be a natural and reasonable incident or consequence of the use of the vehicle for the purposes contemplated by the policy, although not necessarily foreseen or expected; (4) The accident must be one which can be "immediately identified" with the use of the automobile as contemplated by the parties to the policy; (5) The accident must be of a type reasonably associated with the use of the automobile as contemplated by the contracting parties; (6) The accident must be one which would not have happened "but for" the use of the automobile.

Although the six tests enunciated in *Dairyland* were helpful in resolving that case, they are disapproved to the extent they are inconsistent with this opinion.

tion supported our decisions in *Mason v. Celina Mutual Insurance Co.*, 161 Colo. 442, 423 P.2d 24 (1967), and *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972), in which we held that firearm injuries occurring fortuitously in an automobile did not arise from the "use" of the insured vehicle. In *Mason*, we held that injuries occurring while three youths were toying with a pistol in the insured's vehicle did not arise out of a covered use of the automobile. We stated:

> Here no causal connection between the discharge of the pistol and the stopped vehicle was shown, as is required to afford coverage under such a policy. Even though in a technical sense it might be argued that Donald was using the vehicle at the time the shot was fired, for he was sitting in it, such a use, however, is not the type of use contemplated by the policy in question where the injury would have to be one originating from the use of the vehicle as such.

*Id.* 161 Colo. at 444, 423 P.2d at 25.

In *Azar*, a hunter attempted to shoot a rabbit from inside his parked automobile. As he was bringing the rifle back into the car, the weapon discharged and injured his companion. We rejected the victim's claim that the insured's policy covered the accident, and said:

> No contention was made that the vehicle in any way contributed to or was connected with accidental discharge of the firearm. The only relationship of the vehicle to the accident was the presence of the tort-feasor and the injured person in the automobile at the time of the infliction of the injuries.... In our view, it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the inju-

ry originated from, grew out of or flowed from the use of the firearm. *Id.* 178 Colo. at 60–61, 495 P.2d at 555. *See also Carter v. Grain Dealers Mutual Insurance Co.*, 10 Ark.App. 16, 660 S.W.2d 952 (1983) (where the only connection between a shooting and the use of the vehicle was that the shooting victim and the insured happened to be in the automobile when the accident occurred, the victim's estate could not recover accidental death benefits under the insured's policy); *Love v. Farmers Insurance Group*, 121 Ariz. 71, 588 P.2d 364 (App.1978) (the beating death of the insured inside his own vehicle was not causally related to the ownership, use, and maintenance of his automobile).

■ In the present case, the evidence is clear that the claimants' injuries were causally related to the use of Weaver's jeep. The accident occurred while Weaver was lifting the rifle out of the jeep's gun rack preparatory to unloading the rifle and safely storing it for the journey home. Weaver's actions were intimately related to his use of the vehicle as transportation for himself and his rifle from a mountain hunting area to his home in Canon City.

The case is therefore distinguishable from *Mason v. Celina Mutual Insurance Co.*, 161 Colo. 442, 423 P.2d 24 (1967) and *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972), noted above, because the accident here was not merely coincidental to the use of the automobile. The undisputed facts establish that but for Weaver's attempt to secure the rifle for the purpose of transporting himself and the rifle to Canon City, the claimants would not have been injured.[3] The claimants need only show that the covered use of Weaver's jeep was an actual cause of their injuries. We are satisfied that they have met that minimal burden.[4]

> This case is therefore distinguishable from those cited by the dissent in which the accident, although occurring inside the vehicle, was not related to a use of the vehicle.

**3.** The accidental discharge of Weaver's rifle did not "merely [happen] to occur in or near" Weaver's vehicle, as the dissent asserts. The shooting would not have occurred if Weaver had not been engaged in an unsuccessful attempt to secure the rifle for a safe journey home. Weaver's motivation in moving the rifle was incident to the transportation of the rifle in the jeep.

**4.** Our conclusion is consistent with the settled rule that injuries resulting from the adjustment of cargo and the loading and unloading of ve-

Accordingly, the court of appeals decision is reversed. The case is remanded to the court of appeals with directions to reverse the trial court's order denying the claimants' motion for summary judgment.

ROVIRA, J., dissents, and KIRSHBAUM and VOLLACK, JJ., join in the dissent.

ROVIRA, Justice, dissenting:

The issue presented in this case is whether, when an insured stands beside his parked vehicle and reaches into it to unload a firearm, the vehicle is in "use," within the meaning of that term as it is found in section 42-7-413, 17 C.R.S. (1984). The majority concludes that the vehicle is in "use," and therefore the insurance company is potentially liable for injuries caused by the discharge of the firearm. I believe that this result is reached by applying an incorrect analysis and contrary to our prior cases. Accordingly, I respectfully dissent.

## I.

The majority states that a claim is covered by automobile liability insurance if, "the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose" and that "the requisite causal relationship" may be established by showing "that the accident would not have occurred but for the vehicle's use." Maj. op. at 135. The majority thus holds that a causal relationship between the vehicle and the accident can be satisfied by showing that "but for" the use of the vehicle, the accident would not have occurred.

However, in *Titan Construction Co. v. Nolf,* 183 Colo. 188, 195, 515 P.2d 1123, 1126 (1973), we stated, "we do not hold that the 'but for' doctrine should apply when there is a lack of relationship between the [vehicle] and the accident." After *Titan,* we stated that this relationship must be a "causal connection between the use of the vehicle and the injuries sustained...." *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227, 230 (Colo.1984). Thus, merely satisfying the extremely broad "but for" test is not enough; there must be a causal connection between the vehicle and the accident.

The inquiry then is not whether the accident would not have occurred "but for" the use of the automobile, but whether there was a causal relation or connection between the injury and the use of the vehicle.[1] *Azar v. Employers Casualty Co.,* 178 Colo. 58, 495 P.2d 554 (1972) (hunting from automobile not "use" of vehicle for purposes of automobile liability insurance coverage).

Although the inquiry into whether there is a causal relation or connection between the injury and the use of the vehicle must be done on an *ad hoc* basis, *Titan,* 183 Colo. at 195, 515 P.2d at 1126, examination of past "use" cases (both those involving firearms and those that do not) shows that where, as here, the incident merely happened to occur in or near a vehicle the vehicle was not being "used" for purposes of section 42-7-413, 17 C.R.S. (1984).

## II.

In *Mason v. Celina Mutual Insurance Co.,* 161 Colo. 442, 423 P.2d 24 (1967), the

hicles are causally related to a proper use. *See, e.g., International Business Machines Corp. v. Truck Insurance Exchange,* 2 Cal.3d 1026, 89 Cal.Rptr. 615, 474 P.2d 431 (1970) (the "use" of a vehicle for purposes of an automobile insurance policy includes its loading, unloading and the complete operation of pickup and delivery); *Viani v. Aetna Insurance Co.,* 95 Idaho 22, 501 P.2d 706 (1972) (a sportsman who was injured by the discharge of a concealed gun while the defendant was unloading camping equipment suffered a compensable injury); *Oklahoma Farm Bureau Mutual Insurance Co. v. Mouse,* 268 P.2d 886 (Okla.1953) (a driver who fell from his truck while adjusting cargo suffered injuries

as a result of the "ownership, maintenance or use" of that vehicle).

1. The vehicle does not have to be moving or even have the engine on to find a "use" within its inherent purpose. *See Trinity,* 690 P.2d 227 (customer, injured when the awning of a truck used to sell sandwiches collapsed, was covered because truck was in "use" at time); *Titan,* 183 Colo. 188, 515 P.2d 1123 (liability insurance on cement mixer truck covered injuries caused by brick knocked off building by pump attached to chute on truck).

insured had driven four other high school boys to target practice with some firearms. On returning to school, the insured and one other boy went back to class. The insured allowed three boys, including Donald Mason, to remain in his parked car, with the weapon, while he went to class. Mason negligently handled the weapon, and it accidentally discharged, killing another boy in the vehicle. The deceased boy's father sued Mason, who in turn brought in the insured's automobile liability carrier claiming that he was protected by the insured's car insurance policy.

In holding that the car was not being "used," even though the boys were seated in it at the time, we stated that "no causal connection between the discharge of the pistol and the stopped vehicle was shown, as is required to afford coverage under such a policy." Implicit in *Mason* is the realization that the negligent mishandling of a firearm was the cause of the accident. The fact that the boys happened to be seated in a car at the time had no bearing on the accident.

The same is true of the present case. Weaver was about to unload his gun— something he could have done as easily before starting the return trip or after arriving home. The fact that he chose to do so in the interim does not establish that the vehicle was in any way causally connected to the accident.

The majority attempts to distinguish *Mason* by stating that "Weaver's actions were intimately related to his use of the vehicle as transportation for himself and his rifle from a mountain hunting area to his home in Canon City." Maj.op. at 137. Unless the insured in *Mason* lived at the school where the accident occurred, then he, too, was using his vehicle as transportation for himself and his weapon from the target range to his home. The fact that the interim stop at school was longer than the interim stop at the gas station in the present case cannot serve as a meaningful distinction.

We next considered the question of discharge of a weapon from a car in the insurance context in *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972). *Azar* involved two men hunting from an automobile. Azar, the insured driver, was about to fire a shotgun through his automobile window when a car approached from the opposite direction. He then brought the shotgun back into his automobile, where it accidentally discharged, injuring his passenger.

In holding that the automobile was not in "use" for the purposes of insurance coverage, this court stated,

No contention was made that the vehicle in anyway contributed to or was connected with the accidental discharge of the firearm. The only relationship of the vehicle to the accident was the presence of the tort-feasor and the injured person in the automobile at the time of the infliction of the injuries.... In our view, it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm. Use, as contemplated by the automobile liability policy, means *use of the vehicle as such,* not a use foreign to its inherent purpose, to which the vehicle might conceivably be put.

*Azar,* 178 Colo. at 60–61, 495 P.2d at 555 (emphasis in original).

The same is true of the present case. No contention is made that the vehicle in any way contributed to the accident, other than the fact that the weapon was inside the vehicle at the time of its discharge. Weaver was standing beside the vehicle, reaching in, and all the victims were outside. Again, the fact that Weaver chose to unload his weapon while it was in the vehicle, rather than immediately after the hunt or after arriving home, does not establish a "causal relationship" between the use of the vehicle and the accident.

The majority attempts to distinguish *Azar* from the case at bar "because the accident [here] was not coincidental to the use of the automobile." Maj. op. at 137.

I am at a loss to see how a vehicle reached into for purposes of unloading a weapon can be "intimately related" to the accident, *id.*, while a vehicle in which the tort-feasor, victim and weapon are all situated and from which shots are intentionally being fired is "coincidental" with the accident. *Id. Accord Hutchins v. Mills*, 363 So.2d 818 (Fla.App.1978) (use of pickup truck bed as stand from which to hunt not a covered use), *cert. denied*, 368 So.2d 1368 (Fla. 1979); *Hartford Fire Insurance Co. v. State Farm Mutual Auto Insurance Co.*, 264 Ark. 743, 574 S.W.2d 265 (1978) (camper from which pistol was fired not covered); *Norgaard v. Nodak Mutual Insurance Co.*, 201 N.W.2d 871 (N.D.1972) (use of parked vehicle as a gun rest not a covered use); *National Union Fire Insurance Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966) (causal relation must exist between the injury and use of vehicle to come within ambit of use of vehicle; vehicle transporting hunters home after hunting trip not in "use" when firearm, being unloaded in vehicle, discharged) (cited with favor in *Azar*, 178 Colo. at 61, 495 P.2d at 555).

### III.

Our prior non-firearm automobile insurance cases interpreting the term "use" also indicate that this tragedy is not within section 42–7–413. *Dairyland Insurance Co. v. Drum*, 193 Colo. 519, 568 P.2d 459, (1977), involved an accident that occurred while one vehicle, being towed by another, was involved in an accident. In holding that the towing vehicle's insurance covered the accident, we stated that a "use" could be found, "where the *vehicle* was dealt with in a manner that created or had the potential of creating an unreasonably dangerous situation." *Dairyland*, 193 Colo. at 522, 568 P.2d at 462 (emphasis added).

In the present case, the *vehicle* was not dealt with in an unsafe manner, the *firearm* was. It is a crime to carry a loaded rifle in a car.[2] Had Weaver unloaded his weapon prior to transporting it, as prudence and the law required, the discharge would not have occurred in the vehicle. This strengthens my conclusion that the "use" of the automobile was in no way causally connected with the accident.

Most recently, we examined the question of "use" for liability insurance purposes in *Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227 (Colo.1984). There, we found coverage when the awning of a food vending truck collapsed and injured a customer. We held that the injuries would not have occurred, "except for the use of the truck for the sale of refreshments." *Id.* at 231. The majority implies that the same reasoning applies here—that the accident would not have occurred except for the vehicle's use to transport the weapon. Maj. op. at 135, 136, and 137. This ignores the fact that accidental discharges occur during gun unloading and cleaning in households, cabins, and in the field every year.

Thus, our previous cases indicate where the activity that caused the accident could have as easily occurred outside the vehicle, the vehicle is merely a shell in which the accident occurred and is not "causally connected" with the accident. In such cases, the vehicle is not in "use" within the meaning of section 42–7–413.

Even if we did not have these previous cases to guide us, common sense indicates that unloading a firearm is an act that is dangerous no matter where it occurs. Accidental discharges during unloading of a firearm, many of them tragic, happen regularly, regardless of where the weapon, tortfeasor, and victim happen to be situated.

---

**2.** Section 33–6–125, 14 C.R.S. (1984). The difference in potential for danger between an unloaded firearm, no matter how unsafely used, and a loaded firearm, no matter how carefully handled, is so great that it is worth considering a special rule to govern cases where a firearm is discharged from within an automobile. *Compare* 12 G. Couch, *Insurance* § 45:56 (discussing firearm discharge cases separately from all other "use" cases; "a great deal of litigation aris[es] out of transportation of firearms in insured motor vehicles where the gun discharges injuring passengers or third parties. The better position is that such accidents are not covered under an automobile liability policy.").

In my view, this case involves negligent handling of a firearm, not use of the vehicle as such. *Azar*, 178 Colo. at 61, 495 P.2d at 555. The automobile was not being "used" within the meaning of automobile accident liability coverage. To hold the injury here to be one arising out of the use of the automobile inappropriately enlarges the statutory language by judicial construction. The trial court and the court of appeals were correct in holding the insurance company was not liable.

Accordingly, I dissent.

I am authorized to state that Justice KIRSHBAUM and Justice VOLLACK join in this dissent.