The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 2, 2025

## 2025COA81

**No. 24CA1639, *Nesjan v. J & A Distributing, Inc.* — Limitation of Actions — General Limitation of Actions Three Years — Tort Actions for Bodily Injury or Property Damage Arising out of the Use or Operation of a Motor Vehicle**

Under section 13-80-101(1)(n)(I), C.R.S. 2025, all tort claims for bodily injury or property damage arising out of the use or operation of a motor vehicle must be brought within three years after the claim accrues.  In this negligence action involving a plaintiff who suffered injuries while inspecting a customer's box truck, a division of the court of appeals interprets the phrase "use . . . of a motor vehicle" in the statute of limitations.  The division holds, as a matter of first impression, that this phrase encompasses a person who was hired to inspect and repair a motor vehicle and who sustained bodily injuries during performance of those maintenance-related activities.  Accordingly, the division

reverses the district court's judgment dismissing the plaintiff's complaint as untimely and remands the case for further proceedings.

COLORADO COURT OF APPEALS **2025COA81**

Court of Appeals No. 24CA1639
El Paso County District Court No. 24CV30892
Honorable Amanda J. Philipps, Judge

Tormod Marc Nesjan,

Plaintiff-Appellant,

v.

J & A Distributing, Inc., Tony Vasquez, and Judith Vasquez,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE KUHN
Moultrie and Bernard*, JJ., concur

Announced October 2, 2025

Bradford Pelton, P.C., Alex D. Kerr, Colorado Springs, Colorado, for Plaintiff-Appellant

Lasater & Martin, P.C., Janet B. Martin, Greenwood Village, Colorado, for Defendants-Appellees

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Section 13-80-101(1)(n)(I), C.R.S. 2025, provides that "[a]ll tort actions for bodily injury or property damage arising out of the *use* or operation of a motor vehicle" must be commenced within three years after the cause of action accrues.  (Emphasis added.)  In this case, the district court applied the two-year statute of limitations in section 13-80-102(1)(a), C.R.S. 2025, which addresses negligence actions generally, and it dismissed as untimely the negligence action that plaintiff, Tormod Marc Nesjan, filed three years after he suffered serious injuries while inspecting a box truck owned by defendants, J & A Distributing, Inc., Tony Vasquez, and Judith (Judy) Vasquez (collectively, J & A Distributing).  We consider the meaning of the phrase "use . . . of a motor vehicle" in section 13-80-101(1)(n)(I), and we hold that this phrase encompasses a person who was hired to inspect and repair a motor vehicle and who sustained bodily injuries during performance of those maintenance-related activities.  Accordingly, we reverse the district court's judgment of dismissal on statute of limitations grounds under C.R.C.P. 12(b)(5) and remand the case for further proceedings.

# I.    Background

¶ 2     We draw the following factual background from the record on appeal, including the allegations in Nesjan's complaint.

¶ 3     On May 14, 2021, Nesjan, a mechanic, agreed to inspect a box truck owned by J & A Distributing for a suspected driveshaft problem. One of the company's owners, Tony Vasquez,[1] drove the box truck from the company's premises to the driveway of Nesjan's nearby mechanic shop. In preparation for the work that he was hired to do, Nesjan put the truck's gearshift in park, engaged the emergency brake, and placed wheel chocks under the tires.

¶ 4     Then Nesjan went underneath the box truck to check the condition of the driveshaft. He "observed extremely loose bearings and bolts on the [part of the] driveshaft where it connected to the front end of the truck." Nesjan alleged that, during his inspection, the driveshaft came loose, causing the entire box truck to roll backward and over him. He sustained serious bodily injuries in the accident, including fractured ribs, a broken neck, a broken back, and a broken right leg.

---

[1] Judy Vasquez is the other owner of J & A Distributing.

¶ 5    On May 14, 2024, the three-year anniversary of the accident, Nesjan filed the underlying lawsuit against J & A Distributing. He asserted claims for negligence and negligence per se based on J & A Distributing's alleged failure to maintain the box truck in good mechanical condition. J & A Distributing moved to dismiss the action under C.R.C.P. 12(b)(5). As relevant to this appeal, J & A Distributing argued that Nesjan's claims were barred because he brought them outside the two-year statute of limitations set forth in section 13-80-102(1)(a) for most tort actions.[2] In his response to the motion to dismiss, Nesjan argued that his claims were subject to the longer three-year limitations period applicable to tort actions arising out of motor vehicle accidents because he had been injured in an accident "involving the use and/or operation" of the box truck. *See* § 13-80-101(1)(n)(I). Specifically, Nesjan asserted that he had "used" the box truck by inspecting its undercarriage for the purported issue with the driveshaft.

---

[2] J & A Distributing also argued that it owed no duty of care to Nesjan and that it violated no statute, rule, or regulation that could support a finding of negligence per se. Because the district court dismissed the case based on the statute of limitations, it didn't address these additional arguments, and we offer no opinion on them.

¶ 6    The district court agreed with J & A Distributing.  The court concluded that the limitations period contained in section 13-80-101(1)(n)(I) didn't apply to Nesjan's cause of action because, at the time of the accident, "the [box] truck at issue was stationary and not in active 'use or operation'" by Nesjan or J & A Distributing. And because Nesjan filed his negligence action after the applicable two-year statute of limitations had run, the district court dismissed the action as untimely.

## II.    Analysis

¶ 7    Nesjan contends that the district court erred by concluding that his claims are governed by the expired two-year statute of limitations, instead of the three-year statute of limitations, because the claims arise out of the use or operation of a motor vehicle within the meaning of section 13-80-101(1)(n)(I).  We agree and, therefore, reverse.

### A.    Standard of Review and Applicable Law

¶ 8    The purpose of a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted is to test the legal sufficiency of a plaintiff's complaint.  *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2016 COA 3, ¶ 12, *aff'd*, 2018 CO 3.  A

4

defendant can raise a statute of limitations defense under Rule 12(b)(5) when "the bare allegations of the complaint reveal that the action was not brought within the required statutory period." *SMLL, L.L.C. v. Peak Nat'l Bank*, 111 P.3d 563, 564 (Colo. App. 2005). We review de novo a district court's dismissal of a claim on expired statute of limitations grounds. *Gomez v. Walker*, 2023 COA 79, ¶ 7. Likewise, we review questions of statutory interpretation de novo. *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 23.

¶ 9     When interpreting a statute, our task is to ascertain and give effect to the legislature's intent. *Id.* at ¶ 24. We begin this inquiry by considering the plain language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* In doing so, "[w]e look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Id.* Because we presume that the legislature acts intentionally when selecting the words used in a statute, *see Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004), we avoid constructions that would add to, or

subtract from, the words that the legislature has chosen, *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.

¶ 10     When more than one statute of limitations could apply to a particular action, we must employ the following rules of statutory construction to determine the governing limitations period: "(1) the more specific of two statutes applies; (2) the later-enacted statute applies over the earlier-enacted statute; and (3) because statutes of limitation are in derogation of a presumptively valid claim, the longer statutory period for filing a lawsuit applies over the shorter period." *City & County of Denver v. Gonzales*, 17 P.3d 137, 140 (Colo. 2001).

### B.     The District Court Erred by Dismissing Nesjan's Claims as Untimely

¶ 11     Two statutes of limitation are at play in this case.  The statute that the district court applied, section 13-80-102(1)(a), establishes a general two-year statute of limitations for all tort actions that don't arise out of a motor vehicle accident.  Under section 13-80-101(1)(n)(I), "[a]ll tort actions for bodily injury or property damage arising out of the use or operation of a motor vehicle" must be commenced within three years after the cause of action accrues.

6

A claim accrues on the date that both the injury and its cause are known, or should have been known, by the exercise of reasonable diligence. § 13-80-108(1), (12), C.R.S. 2025.

¶ 12 It's undisputed that Nesjan's claims accrued on May 14, 2021, the date of the accident. Thus, the timeliness of Nesjan's negligence action, filed three years later, turns on whether it implicated bodily injuries arising out of the "use or operation" of the box truck, as contemplated by section 13-80-101(1)(n)(I). *See Gonzales*, 17 P.3d at 141 (holding that the three-year statute of limitations applies to *all* tort actions arising out of the use or operation of a motor vehicle, regardless of whether the alleged tortfeasor was using or operating a particular motor vehicle). The statute doesn't say what qualifies as "use" or "operation" of a motor vehicle, so we look to the plain meaning of those undefined terms. *See Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 20.

¶ 13 Black's Law Dictionary defines "use" as meaning "[t]o employ [a thing] for the accomplishment of a purpose; to avail oneself of." Black's Law Dictionary 1862 (12th ed. 2024). Similarly, Merriam-Webster defines "use" as "to put into action or service," "to carry out a purpose or action by means of." Merriam-Webster

Dictionary, https://perma.cc/8CXS-2SDH. And the term "operate" is defined in Black's Law Dictionary as "[t]o direct, put into action, or maintain the functioning of . . . ; to engage, use, and control (a machine, computer, equipment, etc.)." Black's Law Dictionary at 1312.

¶ 14    Considering the plain and ordinary meanings of these terms and the circumstances of this case, we conclude that Nesjan's injuries arose out of the use of a motor vehicle within the meaning of section 13-80-101(1)(n)(I). *See Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 102-03 (Colo. 1995) (noting that, in determining whether an activity constitutes the use of a motor vehicle, courts must evaluate the activity "as part of the totality of the circumstances present in the case"). Nesjan's complaint alleged that J & A Distributing hired him to "adequately inspect [the box truck] and diagnose any issues that were readily visible and give his opinion on those issues," including issues concerning the driveshaft located underneath the truck. To complete that work, he allegedly put the box truck in park, engaged the emergency brake, placed wheel chocks under its tires, and went underneath the truck to inspect its undercarriage. During the inspection, Nesjan's

8

complaint further alleged, he sustained serious bodily injuries when the driveshaft dislodged, causing the truck to move backward and roll over him. Given these allegations, and Nesjan's claims that he used the box truck to carry out the mechanical services for which J & A Distributing hired him, we cannot say that "the bare allegations of the complaint reveal that the action was not brought within the required statutory period." *SMLL, L.L.C.*, 111 P.3d at 564.

¶ 15    True, in performing those services, Nesjan didn't physically operate the box truck by moving it forward, backing it up, or even running its engine. And as J & A Distributing points out, the truck was stationary, secured, and unoccupied at the time of the accident. But these circumstances aren't dispositive in determining whether Nesjan's actions amounted to the *use of a motor vehicle* under section 13-80-101(1)(n)(I). While no published Colorado appellate decision has addressed the meaning of that italicized phrase in the statute of limitations, our appellate courts have interpreted identical language in considering whether an insured was entitled to recover benefits under a motor vehicle insurance policy and relevant statutes. In those cases, courts broadly

construed the phrase by concluding that it encompassed other uses of a vehicle than mere transportation.  The case that Nesjan cites in his briefing, *Great Plains Insurance Co. v. Angerman*, 833 P.2d 810 (Colo. App. 1991), illustrates this point.

¶ 16    In *Angerman*, a division of this court considered whether an insured was entitled to recover personal injury protection (PIP) benefits under a motor vehicle liability insurance policy and the former Colorado Auto Accidents Reparation Act (No-Fault Act).  *Id.* at 810-11.  The statute provided that an insured person could recover those benefits "because of bodily injury arising out of the *use* or operation of a motor vehicle."  *Id.* at 811 (quoting § 10-4-706(1)(b), (c), C.R.S. 1987).  Angerman was seriously injured while inspecting a vehicle's brakes when the vehicle fell off a jack and onto him.  *Id.*  The division concluded that he qualified for PIP benefits because his "repair activities constitute[d] a 'use' of the vehicle within the meaning of [the No-Fault Act]" and "there [was] a 'causal connection' between injuries occurring during the course of repairing a vehicle and the use of that vehicle."  *Id.* at 812.  In so concluding, the *Angerman* division observed that, "for purposes of the [No-Fault Act], injuries arise from the use of a vehicle even if the

vehicle is being used for a purpose other than transportation." *Id.* The division also observed that, unlike similar statutes in some other jurisdictions, the No-Fault Act didn't contain a provision excepting maintenance-related activities from the "generally broad concept of 'use.'" *Id.*

¶ 17    The facts in *Angerman* are similar to those in this case, and we find the division's reasoning instructive. Like Angerman, Nesjan alleged in his complaint that he had sustained bodily injuries while inspecting a stationary motor vehicle for a reported mechanical problem. And the statute at issue in *Angerman* contained identical language to that found in section 13-80-101(1)(n)(I).

¶ 18    But beyond this, the Colorado Supreme Court has concluded time and again that an activity qualifies as a use of a motor vehicle as long as the activity, among other things, isn't foreign to the vehicle's inherent purpose. Such purposes include not only transportation and related activities but also any other use of a vehicle that is consistent with its specific characteristics. *See Trinity Universal Ins. Co. v. Hall*, 690 P.2d 227, 228-29, 231 n.4 (Colo. 1984) (concluding that a customer's bodily injuries arose out of the use of a motor vehicle within the meaning of the No-Fault Act

11

when the customer was injured while buying refreshments from a truck that had been "factory-modified for use as a catering truck and mobile refreshment stand"); *Kohl v. Union Ins. Co.*, 731 P.2d 134, 135-36 (Colo. 1986) (concluding that the plaintiffs' injuries arose out of a hunter's use of a motor vehicle for the purposes of section 42-7-413(1)(c), C.R.S. 2025, when the hunter discharged a rifle from the vehicle that was "specially designed to perform on the rugged terrain often associated with hunting areas," and he "had installed a gun rack in his vehicle to facilitate that use of [it]"); *McMichael*, 906 P.2d at 94, 101-03 (concluding that a highway construction worker's injuries, stemming from his use of a truck "specially equipped with an overhead beacon and emergency flashers" as a barricade from oncoming traffic, were covered by the uninsured motorist policy because "the truck was intended to be used as a protective device"); *cf. State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1258-60, 1265-66 (Colo. 2003) (determining that the injuries of a victim who was sexually assaulted inside a noncommercial passenger car didn't arise out of the use of a motor vehicle for the purposes of the No-Fault Act and the uninsured/underinsured (UM/UIM) motorist statute because the

car had "no plain and obvious inherent purpose as a vehicle other than the safe transportation of its passengers and cargo").

¶ 19 In our view, a mechanic who sustains bodily injuries during inspection and repair of a motor vehicle is using the vehicle in a manner that is not foreign to its inherent purpose. While motor vehicles are primarily used for transportation, maintenance activities are closely related to that purpose because only operational vehicles can be used for transportation of people and cargo. At the time of the accident, Nesjan was inspecting the box truck for a suspected driveshaft issue to determine what repairs were necessary to resolve that issue. Put differently, Nesjan's injuries arose out of actions that were intended to return the truck to a condition in which J & A Distributing could resume safe operation of the vehicle. Under these circumstances, his conduct was not only related to the operation of the truck but was essential to its continued use as a means of transportation. *Cf. Kastner*, 77 P.3d at 1262 ("Although the term 'use' is broad enough to cover activities beyond mere 'transportation,' it is not so broad as to include acts that are clearly independent of a vehicle's operation.").

¶ 20    To be sure, J & A Distributing correctly points out that, while this case centers on the timeliness of Nesjan's *tort* action, the above-referenced cases implicated statutory schemes governing an individual's *contractual* right to recover certain benefits under a motor vehicle insurance policy. And as J & A Distributing further notes, those statutes generally promote different public policy interests than the statutes of limitation do. For example, one of the purposes of the former No-Fault Act was "to provide compensation to 'victims of automobile accidents' by providing 'benefits to persons occupying such vehicles' and to other persons 'injured in accidents involving such vehicles.'" *Angerman*, 833 P.2d at 811 (quoting § 10-4-702, C.R.S. 1987). In contrast, "[t]he purposes behind statutes of limitations are to 'promote justice, discourage unnecessary delay, and preclude the prosecution of stale claims.'" *City & County of Denver v. Bd. of Cnty. Comm'rs*, 2024 CO 5, ¶ 53 (quoting *Gunderson v. Weidner Holdings, LLC*, 2019 COA 186, ¶ 9). But despite these differences, we can't simply brush aside the jurisprudence surrounding the meaning of "use . . . of a motor vehicle" in the context of the No-Fault Act and other insurance coverage statutes when interpreting the same phrase in section

14

13-80-101(1)(n)(I). After all, the statutory history of section 13-80-101 reveals a close connection between that statute and the No-Fault Act.

¶ 21    Sections 13-80-101 and -102 were repealed and reenacted together in 1986. While the 1986 version of section 13-80-101 prescribed a three-year statute of limitations for "[a]ll actions under" the No-Fault Act, it didn't include a similar provision for tort actions based on personal injury. Ch. 114, sec. 1, § 13-80-101(1)(j), 1986 Colo. Sess. Laws 695-96. Indeed, the General Assembly added subsection (1)(n)(I) much later in response to the supreme court's decision in *Jones v. Cox*, 828 P.2d 218 (Colo. 1992).

¶ 22    In *Jones*, the majority held that the three-year limitations period for actions under the No-Fault Act applied not only to an insured's contractual claims against their insurer but also to the insured's tort claims against a third party. *Id.* at 222. Chief Justice Rovira dissented from this holding. He noted that for purposes of section 13-80-101, actions under the No-Fault Act only included first-party contract claims between an insured and that person's insurance carrier. *Id.* at 226 (Rovira, C.J., concurring in part and dissenting in part). "The [No-Fault] Act [didn't] govern third-party

tort actions arising from automobile accidents, and it [didn't] create a cause of action in tort." *Id.* Chief Justice Rovira reasoned that because first-party claims under the No-Fault Act were contractual in nature, "the General Assembly provided a three-year statute of limitations for them, consistent with the statutes of limitations for other contract actions." *Id.* Accordingly, he concluded that this limitations period didn't apply to third-party tort claims under the No-Fault Act, such as an individual's personal injury action against the driver of another vehicle. *Id.*

¶ 23 Roughly two years later, the General Assembly amended section 13-80-101 to add subsection (1)(n)(I) and (II). *See* Ch. 348, sec. 1, § 13-80-101, 1994 Colo. Sess. Laws 2824. As part of the same bill, the legislature also amended section 13-80-102(1)(a) to provide that the general two-year statute of limitations didn't apply to tort actions governed by subsection (1)(n)(I). *See* Sec. 2, § 13-80-102, 1994 Colo. Sess. Laws at 2825. Under the amended statute — and as currently written — the three-year limitations period in subsection (1)(n)(I) broadly governs "*all* actions pursuant to paragraph (j) of this subsection (1)." § 13-80-101(1)(n)(I) (emphasis added). While the No-Fault Act was repealed effective

16

July 1, 2003, *see* Ch. 189, sec. 1, § 10-4-726, 2002 Colo. Sess. Laws 649, subsection (1)(j) has since been amended to provide that it applies to *all* actions under the UM/UIM motorist statute, *see* Ch. 234, sec. 8, § 13-80-101, 2003 Colo. Sess. Laws 1572.

¶ 24    This statutory history of section 13-80-101 shows that the General Assembly intended for the three-year statute of limitations to govern all actions brought under the provisions of relevant motor vehicle insurance statutes, irrespective of whether those actions were based on contract or tort. *See Gonzales*, 17 P.3d at 140-41 (discussing, among other things, an argument that "the General Assembly's sole intent in enacting the three-year statute was to resolve [the] inconsistency" identified by *Jones*'s partial dissent). It also suggests that the legislature wanted the phrase "use . . . of a motor vehicle" in subsection (1)(n)(I) to have the same meaning as it does under the statutes to which section 13-80-101 has historically applied. Accordingly, the statutory history of the statute of limitations and the insurance coverage authorities bolster our determination that Nesjan's injuries arose out of the use of a motor vehicle within the meaning of subsection (1)(n)(I).

¶ 25    Finally, the three interpretive rules that we employ to determine the applicable statute of limitations when, as here, more than one statute could govern a particular action weigh in favor of applying the three-year limitations period to Nesjan's claims. *See Gonzales*, 17 P.3d at 140. First, section 13-80-101(1)(n)(I) is a more specific statute than section 13-80-102(1)(a) because it applies to personal injury actions arising out of motor vehicle accidents. *See Gonzales*, 17 P.3d at 140. Section 13-80-102(1)(a) is a general statute of limitations for all tort actions that don't fall within the ambit of section 13-80-101(1)(n)(I) or other specific statutes. Second, as noted above, the General Assembly passed subsection (1)(n)(I) years after it had enacted section 13-80-102(1)(a). *See Gonzales*, 17 P.3d at 140. And third, section 13-80-101(1)(n)(I) prescribes a longer period in which a plaintiff like Nesjan must assert his claims. Accordingly, the application of the longer limitations period under section 13-80-101(1)(n)(I) preserves Nesjan's "presumptively valid claim[s]." *Gonzales*, 17 P.3d at 140.

¶ 26    For the foregoing reasons, then, we hold that the district court erred by concluding that the two-year statute of limitations under section 13-80-102(1)(a), as opposed to the three-year limitations

period under section 13-80-101(1)(n)(I), applies to Nesjan's negligence claims against J & A Distributing. And because Nesjan asserted those claims within three years of the motor vehicle accident, the court erred by dismissing his complaint as untimely.

## III.  Disposition

¶ 27     The judgment is reversed, and the case is remanded to the district court with directions to reinstate Nesjan's complaint.

JUDGE MOULTRIE and JUDGE BERNARD concur.